UNITED STATES of America, Plaintiff,

v.

Cordell SPENCER, Defendant.

Crim. No. 92–0273–02 (HHG).

United States District Court,
District of Columbia.

April 29, 1993.

David Kagan–Kans, Washington, DC, for defendant Cordell Spencer.

Corbin A. Weiss, Asst. U.S. Atty., Washington, DC, for plaintiff U.S.

OPINION

HAROLD H. GREENE, District Judge.

I

The defendant appeared before the Court for sentencing on April 7, 1993, following his conviction of possession with intent to distribute cocaine base and heroin. Inasmuch as under the guidelines issued by the U.S. Sentencing Commission the minimum term of incarceration to which the Court could

sentence the defendant is thirty years,[1] even though the amount of drugs he possessed was less than eight grams, the Court considered the issue of the constitutional validity of a mandated sentence so grossly out of proportion to the seriousness of the offenses.

The Supreme Court has upheld the validity of the 1984 sentencing law and the guidelines issued by the Sentencing Commission issued pursuant thereto against a separation of powers attack,[2] and the Court of Appeals has rejected due process challenges to the sentencing guidelines' restrictions on the sentencing court's ability to consider certain aspects of a defendant's situation.[3] This Court is of course bound by these holdings. However, the appellate decisions concerned the validity of the statute and the guidelines *on their face*. What this Court must consider now is the constitutionality of the guidelines *as applied* to the particular fact situation before it in the instant case. For the reasons stated below, it is the judgment of this Court that, as applied, the guidelines do not pass constitutional muster.

## II

Cordell Spencer was arrested on July 3, 1992 in the course of the execution by the police of a search warrant at Apartment 12 at 640 Park Road, N.W., in the District of Columbia.[4] Prior to the execution of the warrant Spencer had been observed inside the apartment from which the police recovered 6.69 grams of cocaine base and the 0.87 grams of heroin.[5] He was also holding a key to the front door of this unit when he was stopped by the police. Following a mistrial resulting from a hung jury,[6] Spencer was tried again and convicted of these two drug offenses. The only issue before the Court at this time is whether the mandated sentence is consistent with the Constitution.

## III

According to § 4B1.1 of the guidelines promulgated by the Sentencing Commission, a defendant is classified as a career offender if the following three conditions are satisfied: (1) he was at least eighteen years old at the time of the offense; (2) the offense is a felony, constituting either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions constituting crimes of violence or controlled substance offenses. If an individ-

---

1. Under the current sentencing law, thirty years means just that—thirty years; parole has been abolished in the federal system. It should be noted that defendant is presently twenty-five years old; thus, for possession with intent to distribute approximately one quarter ounce of unlawful drugs, he will serve time in a federal penitentiary until he reaches the age of nearly fifty-five. By comparison, under federal drug laws, possession with intent to distribute one kilogram of heroin or five kilograms of cocaine is punishable by a mandatory minimum of ten years. Even for repeat offenders, the Congress only requires a mandatory minimum sentence of twenty years imprisonment where these types of large quantities are involved. And of course such notorious white collar offenders as Ivan Boesky and Michael Millken both served only two years in jail.

2. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

3. *United States v. Lopez*, 938 F.2d 1293, 1296 (D.C.Cir.1991) (rejecting claim that limits placed on a Court's ability to consider the age of the defendant at sentencing violates due process); *see also United States v. Brady*, 895 F.2d 538, 539–40 (9th Cir.1990).

4. Spencer's co-defendant Ronald Chapman was permitted by the prosecution to plead guilty to a single misdemeanor count of possession of heroin for which he received a sentence of six months imprisonment. Both men were named in the government's original five count indictment, but Chapman was the only person found inside the apartment containing the drugs and contraband. Spencer was outside at the time the police arrived, although he did have a key to the unit.

5. There was no evidence that defendant had distributed the drugs in question to anyone. The crucial element of the "intent to distribute" was supplied, as it almost invariably is, by the more or less "canned" testimony of one of the two or three "experts" from the police department whom the U.S. Attorney's office shuffles from one courtroom to another, as needed, to testify that, for one reason or another, the particular defendant must have intended to distribute the drugs.

6. That jury acquitted Spencer of an allegedly related firearms charge. Two other narcotics charges, relating to drug trafficking within 1000 feet of a school, were dismissed by the prosecution prior to trial.

ual qualifies as a career offender, he must, under the guidelines, be placed in criminal history category VI and his base offense level must be determined by the table contained in § 4B1.1. A purely mechanical check of the table reveals that the Court is required to sentence one in the defendant's situation to incarceration for a minimum of thirty years.[7]

There is no question that, technically, this defendant qualifies as a career offender as the Sentencing Commission has defined that term. He was over eighteen years of age at the time of these offenses; the current convictions are for narcotics felonies; and he has three prior felony convictions also involving controlled substances. Simple enough, by the lights of the Commission. A little further scrutiny reveals, however, that the real situation is not quite that clear-cut; more particularly, it appears that from the point of view of any realistic assessment of what constitutes a career offender as that term would normally be understood—as distinguished from the Commission's tables and computations—this defendant's criminal background does not warrant the blanket thirty year sentence required for defendants who meet the criteria set forth in § 4B1.1 of the guidelines.

As already noted, the total weight of the drugs Spencer possessed at the time of his arrest was approximately seven and one-half grams—hardly a large amount when viewed in the context of the significant transactions occurring every day in the drug markets of Miami, New York, San Diego, and other cities, including the District of Columbia. This Court also finds that Spencer's prior offenses, which were also relatively unaggravated, do not indelibly stamp him as a career

offender. In 1986, at the age of nineteen, the defendant was convicted in D.C. Superior Court for distribution of heroin and given a sentence of two years probation. That same year, he was also convicted of attempted distribution of heroin, for which he was sentenced to a maximum of three years under the Youth Rehabilitation Act; In 1991, he was convicted of the even more attenuated charge of attempted possession with intent to distribute heroin, for which he received a sentence of eighteen months probation.[8] This Court, and the parties, have been unsuccessful in their efforts to learn the weight of the drugs involved in these cases. However, in view of the sentences imposed, the amounts must have been small. Indeed, at the sentencing hearing, the Assistant U.S. Attorney conceded as much.

On what basis, then, do we arrive at a thirty-year sentence without even the possibility of parole? The statutory mandatory minimum for possession with intent to distribute over five grams of cocaine base is incarceration for a period of five years. *See* 21 U.S.C. § 841(b)(1)(B). That law as enacted by the Congress sets a mandatory minimum ten-year sentence for individuals who have "one or more prior convictions" for felonies involving controlled substances. *Id.* In other words, Congress has concluded that ten years may be a sufficient punishment in a substantial number of cases. However, as noted above, the guidelines issued by the Sentencing Commission go far beyond that: they automatically direct federal courts to impose a thirty-year sentence where Congress has seen fit only to prescribe a mandatory minimum of ten years.[9] This Court's

---

7. The maximum term under the guidelines is life imprisonment and a fine of up to $6 million. Spencer also faces a mandatory eight years of supervised release following his incarceration under the statute.

8. The Court notes the irony of the fact that the government could have brought this third offense in federal court and sought to have Mr. Spencer sentenced as a career offender at that time. It is not clear how the vesting of such vast power to pick and choose forums in the hands of the United States Attorney's Office advances the goal of eliminating sentencing disparity, one of the primary justifications for the sentencing guide-

lines. *See United States v. Lopez*, 938 F.2d 1293, 1294 (D.C.Cir.1991).

9. That is not to say that the Sentencing Commission, through the career offender provision has directly violated the statute; § 841(b) of Title 21 provides for a term of imprisonment from ten years to life for this offense where an individual has one prior felony narcotics conviction. Therefore, the thirty year to life range imposed by the guidelines is within the statutory range. This Court's concern is whether it is constitutional for the Sentencing Commission to impose this enhanced sentence on every single defendant who qualifies as a career offender under the guidelines.

determination that the additional twenty years mandated not by the Congress, but by the Commission, would produce an unjust sentence, necessitated an examination of the legality of § 4B1.1.

## IV

Before discussing the legal basis for the Court's conclusion that the thirty-year sentence prescribed by the Sentencing Commission renders the Commission's directive unconstitutional as applied, it is important to clarify the grounds upon which the Court is not resting this decision.

■ First. The Court rejects the argument advanced by the defense that the career offender provision of the sentencing guidelines violates the Double Jeopardy Clause of the Fifth Amendment. Under the guidelines, a career offender's base offense level is determined by reference to the statutory maximum he or she is facing. Defense counsel claims that in making this calculation, the relevant statutory maximum period of incarceration should be determined without reference to the statutory enhancements triggered by a defendant's prior convictions.[10] If the enhancements contained in the statute are applied, the defense argues, defendant's prior convictions are "double-counted." Whatever may be the merit of this argument in the abstract, it was squarely addressed and rejected by the Court of Appeals in *United States v. Garrett*, 959 F.2d 1005, 1009–10 (D.C.Cir.1992). This Court is, of course, required to follow that decision.

Second. Although it might have been an easier road to travel, the Court has concluded that a departure from the guidelines was not warranted under these circumstances.

■ Basically, two plausible grounds for departure existed. One is that the Court could have determined that Mr. Spencer's criminal history was significantly overrepresented by the career offender provisions. The Court of Appeals has stated that the

guidelines permit a "downward departure when criminal history category VI, assigned pursuant to the career offender guideline, significantly overrepresents the seriousness of a defendant's past criminal conduct and the likelihood of recidivism." *United States v. Beckham*, 968 F.2d 47, 54 (D.C.Cir.1992). However, the Court in *Beckham* emphasized that this type of departure is "only justified in the rare and unusual case in which a defendant's criminal history category *significantly* overrepresents" his past criminal activity. *Id.*, at 55 (emphasis in original); *See also United States v. Adkins*, 937 F.2d 947, 952 (4th Cir.1991) (departures from career offender provisions are "reserved for the truly unusual case").

Although our Court of Appeals has not had an opportunity to elaborate on what constitutes "significant overrepresentation," a review of career offender departure cases from other jurisdictions is instructive. In *United States v. Bowser*, a case cited with approval by the D.C. Circuit in *Beckham*, departure was upheld where the defendant's two prior offenses triggering the career offender provisions occurred within two months of each other six years prior to the current offense. *United States v. Bowser*, 941 F.2d 1019, 1024–26 (10th Cir.1991). Since the defendant received concurrent sentences for these consolidate offenses, the trial court found that departure from the career offender provisions was justified.[11] *Id.*, at 1022–23.

Similarly, the Eighth Circuit upheld departure where the two prior convictions of a defendant being sentenced for cocaine distribution were the sale of $80 of LSD and a minor burglary/joyriding offense all of which occurred within two months of each other when the 26 year old defendant was only nineteen. *United States v. Smith*, 909 F.2d 1164, 1169–70 (8th Cir.1990).

Unlike the defendants in *Bowser* and *Smith*, Spencer has *three* prior convictions, one more than is necessary to trigger the career offender provision of the guidelines.

---

**10.** A defendant with no prior convictions faces a maximum sentence of 40 years for possession with intent to distribute over 5 grams of crack cocaine. 21 U.S.C. § 841(b)(1)(B). A defendant with at least one prior conviction for a felony narcotics offense faces a maximum sentence under this statute of life imprisonment. *Id.*

**11.** Further, the defendant was only twenty years old at the time of the offenses.

Even if the Court treated his two convictions from the time when he was nineteen years old as one adjudication, Spencer would still qualify as a career offender under § 4B1.1. Moreover, one of these convictions occurred less than a year before the instant offense and Mr. Spencer's prior offenses each involved distribution of either heroin or cocaine.

■ The second possible ground for departing was the claim that Mr. Spencer's prior offenses were the product of his addiction to narcotics. This argument was not substantiated with any evidence or proof on which the Court could conclusively determine that the defendant had, in fact, been addicted in the past. If fact, the government strongly contested the claim of addiction. Additionally, the guidelines specifically state that "drug or alcohol dependance or abuse is not a reason for imposing a sentence below the guidelines." *See* § 5H1.4. Even accepting the defense's factual assertions as true, there is nothing unique about Mr. Spencer's particular addiction which would distinguish him from countless other individuals whose habitual use of narcotics leads them to more serious criminal activity.

In short, the Court carefully considered departure as a means of circumventing the draconian sentence produced by the guidelines in this case. However, the Court could not take this step in good conscience. Congress specifically instructed the federal courts to "impose a sentence" within the applicable guidelines range "unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b).[12] A significant majority of the defendants who come before this Court would be entitled to depar-

ture if such action were justified under these circumstances. The relatively nondescript nature of Mr. Spencer's background made the option of departure unavailable and forced this Court to consider other possible grounds for rejecting a sentence that is, at its core, unjust.

Third. This leaves the issue of the Eighth Amendment and the related questions that may be considered under the Due Process Clause and Article III of the Constitution. It is clear that, were defendant's sentence prescribed solely by statute—as distinguished from the sentencing guidelines—the Eighth Amendment would not be a valid basis for finding the mandated sentence unconstitutional.

■ One need look no further than to the Supreme Court's most recent Eighth Amendment decision in *Harmelin v. Michigan*, 501 U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), to realize that a thirty-year sentence prescribed by Congress or a state legislature for a repeat drug offender does not run afoul of the constitutional protection against "cruel and unusual punishment."[13] This ruling is consistent with other Supreme Court precedents upholding very severe, but non-capital, sentences against Eighth Amendment attacks. *See Rummel v. Estelle*, 445 U.S. 263, 265–66, 100 S.Ct. 1133, 1134–35, 63 L.Ed.2d 382 (1980) (upholding life sentence of person convicted of three thefts totaling $229) and *Hutto v. Davis*, 454 U.S. 370, 370–72, 102 S.Ct. 703, 703–04, 70 L.Ed.2d 556 (1982) (*per curiam*) (upholding 40 year sentence for possession with intent to distribute nine ounces of marijuana). Based upon these precedents, it is clear that if Congress itself had decided to require a thirty-year sentence on an offender situated as is this defendant, the sentence would withstand constitutional chal-

**12.** To be sure, departures from the guideline sentences are available in theory; but the Sentencing Commission has made it quite clear that such departures are only authorized in limited circumstances. *See* U.S.S.G. § 5K2.0 (1992). Part H of Chapter Five of the Guidelines contains nine broad areas relating to a defendant's personal characteristics which courts are instructed may not be considered in determining a person's sentence, except in extraordinary circumstances. Among the characteristics deemed by the Commission not ordinarily relevant are age, education cational background, mental and emotional conditions, employment record, and family responsibilities.

**13.** In *Harmelin*, the Supreme Court upheld, against an Eighth Amendment challenge, a sentence of life imprisonment for possession with intent to distribute 672 grams of cocaine imposed on a defendant who had no prior convictions.

lenge. However, the sentence here was not mandated by the Congress or any other legislative body, but by an administrative agency. As will now be discussed, this difference is crucial.

## V

Every Supreme Court decision that has upheld severe sentences against Eighth Amendment challenges has rested squarely on the proposition that the courts are not to second-guess the legislature—a coordinate branch of government—with respect to its decision as to the appropriate punishment. The decisions of the Supreme Court and lower federal courts are replete with examples of the deference properly accorded the legislature in deciding how individuals who break the laws of society should be punished.

In *Harmelin* the Court definitively stated that "it is beyond question that the legislature has the power to define criminal punishments without giving the courts any sentencing discretion." *Harmelin*, 501 U.S. at —, 111 S.Ct. at 2708 (Kennedy, J., concurring) (quoting *Chapman v. United States*, 500 U.S. —, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991)). This sentiment has been consistently expressed in many other Supreme Court decisions. *See Rummel, supra,* 445 U.S. at 274, 100 S.Ct. at 1139 ("... the length of the sentence actually imposed is purely a matter of legislative prerogative ..."); *Hutto, supra,* 454 U.S. at 374, 102 S.Ct. at 705 ("federal courts should be reluctant to review legislatively mandated terms of imprisonment"); *Gore v. United States,* 357 U.S. 386, 393, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405 (1958) (whatever one's views of the severity, efficacy or futility of a sentence, "these are peculiarly questions of legislative policy").[14]

On a more general plane, the Supreme Court made it clear in *Mistretta, supra,* that when a court is asked to invalidate a "statutory provision that has been approved by both Houses of Congress and signed by the President ... it should only do so for the most compelling constitutional reasons." *Mistretta, supra,* 488 U.S. at 384, 109 S.Ct. at 661.

The U.S. Sentencing Commission obviously is not a legislative body. It lacks the legitimacy that the vote of the people confers on the Congress and the state legislatures. Consequently, the Commission also lacks the attribute of deference that courts owe to legislative bodies in a democratic society. This lack of deference is particularly significant when the Commission's action arguably denies a citizen his individual rights protected by the Constitution, such as the right not to be subjected to cruel and unusual punishment and not to be deprived of liberty without due process. The lack of deference is likewise important when there is a direct interference with the power of federal courts to exercise their historic sentencing function in a situation where a court is required to impose a sentence that is fundamentally at odds with its judicial notions of fundamental justice.

Although there are not many precedents in this field, if only because the Sentencing Commission and its guidelines are so new in historic terms, our Court of Appeals recently issued an opinion which generally supports the reasoning discussed above. In *United States v. Price,* 990 F.2d 1367 (D.C.Cir.1993), the Court of Appeals was confronted with a sentence imposed, as here, in a career offender context. The specific issue was whether one of the Commission's guidelines covered a conspiracy, a subject not encompassed in the statutory framework itself. However, in discussing the subject, the court made observations which are highly pertinent here, as follows:

It is true that courts will normally sustain an act of Congress so long as it is within the bounds of congressional authority, even though Congress may not have even hinted at the supporting rationale, see, e.g., *Flemming v. Nestor,* 363 U.S. 603, 612 [80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435] (1960), and perhaps will do so even if Con-

14. In one instance the Court of Appeals rejected a defendant's claim that a thirty year sentence imposed as a result of the career offender provisions of the guidelines constituted "cruel and unusual" punishment. *United States v. Garrett,* 959 F.2d 1005, 1009 (D.C.Cir.1992). However, the defendant in *Garrett* had numerous prior convictions for violent crime and narcotics, including manslaughter, weapons offense and distribution of preludin.

gress has invoked an improper one. But whatever the exact deference owed Congress on constitutional matters, the Sentencing Commission cannot be said to occupy a parallel position vis-a-vis its legislative mandate. It is simply an independent agency. See *Mistretta*, 488 U.S. at 374, 393 [109 S.Ct. at 655, 665]. Like other independent agencies, it exercises a much narrower delegation of power than Congress's under the Constitution, see *McCulloch v. Maryland*, 17 U.S. [4 Wheat] 316 [4 L.Ed. 579] (1819), and its agenda is far less crowded than Congress's. There seems no reason to except it from *Chenery's* principle that "if the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law." [*Securities and Exchange Comm. v. Chenary*] 318 U.S. [80] at 94 [63 S.Ct. 454, 462, 87 L.Ed. 626 (1943)].

*United States v. Price*, 990 F.2d 1367, 1370 (D.C.Cir.1993).

Elsewhere the court stated that if the Commission were before it in the normal agency case, a remand to the agency for an explanation of its reasoning might be appropriate. However, since the Commission is absent from the proceedings, affecting them only through the guidelines it has issued, the appellate court would consider the matter as on any criminal appeal. *See Id.*, at 1369–70.

The next question to be considered is whether the Sentencing Commission has so closely and directly implemented the congressional directive embodied in the statute that its decision should be regarded as equivalent to a congressional decision. Unquestionably, one of Congress's instructions to the Commission, was that, in designing a comprehensive sentencing system, it should assure that repeat drug offenders are sentenced to "a term of imprisonment at or near the maximum term." 28 U.S.C. § 994(h). This particular provision was given no greater or lesser priority than other sections of the Sentencing Reform Act.

Nevertheless, the Commission has taken this general instruction and woodenly decided to impose a blanket thirty-year mandatory minimum sentence on all repeat drug offenders, irrespective of the lack of gravity of the current or prior drug offenses. That decision blindly applies the directive contained in 28 U.S.C. § 994(h) to an entire universe of cases, without regard for how other statutory sentencing provisions might counsel for a more limited or circumspect approach. *See, infra.* In its approach, the Sentencing Commission misconceives, or at least distorts, the comprehensive approach Congress took toward sentencing in the 1984 Sentencing Reform Act. One of Congress' primary goals in reforming the sentencing system was to "assure [that] sentences are fair both to the offender and to society and that such fairness is reflected in the individual case and in the pattern of sentences in all federal criminal cases." S.Rep. No. 225, 98th Cong., 2nd Sess. at 39 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3222. In the House Report accompanying reform of the sentencing laws, it was noted that the "core goal of fairness" is achieved where the "severity of the sentence [is] not more than is proportionate to and directly related to the culpability of the defender and the harm involved." H.R.Rep. 1017 98th Cong., 2nd Sess. at 36 (1984).

Congress's efforts to implement these goals is reflected in various provisions of the Sentencing Reform Act. For example, 18 U.S.C. § 3553(a) specifies six factors which a Court shall consider "in determining a particular sentence to be imposed." The very first criterion listed by Congress is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Yet these factors identified in the statute are explicitly removed from the Court's calculus under § 4B1.1 of the sentencing guidelines. Professor Daniel Freed of Yale Law School has argued persuasively that the Sentencing Commission has strayed from the priorities contained in § 3553(a) and that the "guidelines deviation from the statute clouds its validity." Daniel Freed, *Federal Sentencing in the Wake of the Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681, 1749 (1992).

The career offender provision of the guidelines sweep up within their grasp defendants with widely different personal histories and criminal records. As noted, two of Mr. Spencer's prior narcotics violations are for attempted offenses and the other is a seven-year old, apparently minor, distribution charge. Although the convictions for attempt may reflect the realities of the plea bargaining process, they also indicate a determination by the prosecutor's office that these offenses were not of significant gravity. There is also evidence, albeit disputed, that these narcotics offenses, which, significantly, are the only criminal convictions on Mr. Spencer's record, were the product of his addiction to cocaine and other controlled substances.

Yet under the career offender provision, this Court is prohibited from taking into account the relatively minor nature of these prior convictions or the extenuating circumstances.[15] Mr. Spencer receives the same sentence under § 4B1.1 as an individual with several prior convictions for the distribution of a kilo or more of cocaine base or convictions involving rape, the use of firearms, or other crimes of violence which pose far greater threats to society than the offenses at issue here. § 4B1.1 flies in the face of Congress's stated intention that the guidelines "bring regularity, but not rigid uniformity, to the sentencing process." H.R.Rep. 1017, 98th Cong., 2nd Sess. at 41 (1984).

In short, the career offender provisions of the guidelines "direct the court to ignore many relevant facts about the offender and the crime and to fix the offender's sentence based on only one or two 'facts.'" *United States v. Gordon,* 953 F.2d 1106, 1108 (8th Cir.1991) (Heaney, J., concurring). Factors such as the defendant's age at the time of the prior offenses, his role in those crimes, the number of years that have elapsed since then, and the relative severity of the previous convictions are simply prohibited from entering the sentencing court's calculus once § 4B1.1 is triggered. *Id.* This Court agrees with Judge Heaney's blunt conclusion that focusing "only on the *existence* of prior convictions without looking into what actually happened years ago, however, results in irrational and unjust sentences." *Id.* (emphasis added).

## VI

It is sometimes suggested that judges are opposed to the new sentencing scheme because they do not wish to lose the power that stems from discretion which was unfettered before the dawn of the "guidelines."[16] Such a suggestion is too cynical by half. The fact of the matter is that, prior to the advent of the guidelines, every conscientious judge spent a great deal of time, energy, and moral capital attempting to fit the sentence to the crime and the individual offender. Balancing the competing forces of retributive goals, the needs of society, pleas for leniency, and personal circumstances, was a complex and daunting task. It is far easier, on the conscience and the demands on a judge's schedule, to follow the mathematical computations devised by the Sentencing Commission, and figuratively to wash one's hands of the responsibility for what would otherwise be very difficult, sometimes agonizing decisionmaking.

It is not the power to make these decisions that federal trial judges all across the land regret losing; it is the loss of the ability to do justice. Most judges feel a profound and severe sense of wrong when they have to sit by, powerless, while sentences are imposed in their names and by their voices which are entirely at odds with what justice and basic concepts of morality and equity require.

Judges, like all others who operate under the Constitution, are aware of and accept the fact that basic, broad decisions are made by

---

15. As noted at the sentencing hearing, this Court is not, in any sense, minimizing the severity of the drug problem in this city and across this nation. However, we cannot allow justice and rationality to become casualties of a war on drugs being waged with draconian, politically expedient, sentences.

16. The term guidelines is a misnomer. The many commands issued by the Sentencing Commission under various labels, and changed from time to time as the Commission sees fit, are actually tightly structured and detailed directives which allow for departures only in extraordinary circumstances.

those elected by the people—the Congress and the President. Minimum and maximum sentences prescribed by the Congress have been a feature of criminal law for some time. But there is a significant difference between such prescriptions, on the one hand, and detailed requirements imposed by an unelected body that is not responsible to the people, on the other. Moreover, that body, whatever the position and the distinction of the individual members, does not possess the lifetime tenure that has been the hallmark of the Judiciary for hundreds of years, and is a significant safeguard against inevitable political pressure.

There is no doubt that this Court and all other inferior federal courts must generally adhere to the directives issued by this Commission. *See Mistretta, supra,* 488 U.S. at 412, 109 S.Ct. at 675. However, the Commission is not infallible or endowed with immunity from judicial scrutiny into the constitutionality of its decisions. From virtually day one of this Republic it has been clear that not even Congress enjoys such a privilege. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

In prescribing a minimum sentence of thirty years the Sentencing Commission did not consider, and prohibits the sentencing judge from assessing, the factors pertinent to the individual being sentenced or events which resulted in his being classified as a career offender. By constricting this Court's function in this manner, the guidelines impermissibly invade the judicial domain and attempt to dictate a plainly unjust and excessive sentence. They eliminate this Court's ability and duty to look behind the mere existence of prior convictions and impose a sentence that has some rational link to the conduct and personal history of the defendant. In this particular case, the Court finds that a thirty-year sentence for possessing less than eight grams of illegal narcotics with intent to distribute violates the constitutional protections of due process under the Fifth Amendment, Article III, and the Eighth Amendment of the Constitution.

Accordingly, the defendant has been sentenced to the ten year minimum prescribed by Congress on counts one and two to run concurrently. Mr. Spencer was also given an eight year term of supervised release on count one and a six year term of supervised release on count two to be served concurrently. Finally, no fine is imposed because the Court found that the defendant does not have the ability to pay a fine. A special assessment of $50 per count, for a total of $100, was imposed.