**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Benjamin A. DAVIS, Defendant–**
**Appellant.**

No. 92–6497.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 9, 1993.

Decided Jan. 20, 1994.

**528**

David G. Dake, Asst. U.S. Atty., Harwell G. Davis, III, Asst. U.S. Atty. (argued and briefed), Chattanooga, TN, for U.S.

Benjamin Davis (briefed), Oakdale, LA, Ashley L. Ownby (argued and briefed), Cleveland, TN, for defendant-appellant.

Before: BOGGS and SILER, Circuit Judges; and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

Benjamin Davis appeals his conviction and sentence for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On appeal, Davis challenges the denial of his motion to dismiss the indictment based on alleged selective prosecution; the admission of evidence of 30 or 40 prior crack sales; the denial of his motion for a new trial based on newly discovered evidence pertaining to improprieties committed in unrelated cases by one of the arresting officers; and his 210–month sentence based on career offender

status. We affirm Davis' conviction and sentence.

## I.

### A.

In early 1992, the wife of Kevin Beadnell contacted Officer Dennis Maddux and informed him of her husband's crack cocaine addiction. Maddux talked to Beadnell about his drug use, but Beadnell continued to buy and use crack cocaine. Beadnell later told the police that he had bought an average of 3 to 4 rocks of crack from Davis and Jarrell Hickey on each of 30 to 40 occasions between September 1991 and January 1992, at a cost of $20 per rock.

On January 9, Beadnell bought more crack that he, Davis and Hickey smoked. Beadnell returned home with Davis and Hickey, both of whom possessed a number of rocks of crack cocaine. Davis asked Beadnell if he could find some buyers for the cocaine. Beadnell went to a pay telephone and called Maddux and gave him permission to enter his home without a warrant.

Maddux requested Detective Barry Hughes and Police Chief Wesley Snyder to accompany him, and together they raided the Beadnell home. Upon entering the house, Maddux observed Davis in the process of dumping crack from a container into his mouth. Maddux tackled Davis and tried to retrieve the evidence. Maddux and Hughes both saw a piece of cocaine fall on the floor and Hughes picked it up. This was the only contraband retrieved, although the officers also seized $310 from Davis.

In a statement given after his arrest, Davis admitted to having purchased 10 rocks of crack cocaine for $100 in Chattanooga. He also admitted taking the crack cocaine back to Cleveland with the intent of breaking it into 20 rocks, with a total value of $200. Davis said that he did not go to Beadnell's house with the intention of selling the cocaine to him, because Beadnell had already bought cocaine from "the other guy," presumably

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michi-

gan, sitting by designation.

Hickey. Davis confirmed that he had swallowed rocks of cocaine when the police entered the house. Davis was released from custody following his statement.

Davis previously had been charged with selling cocaine on four occasions between August 1989 and May 1990. After the second sale, he offered to help the police in exchange for assistance from them. He provided reliable information, but was not required to testify at any trials. Davis was sentenced on the state charges in February 1991, and Hughes personally requested leniency for Davis due to the assistance Davis had given. At the time of his arrest at Beadnell's home, Davis was on probation on the state convictions, and was not then working with the police. Hughes told Davis that he would not immediately charge him but, rather, would talk to the district attorney. He asked Davis to contact him later, but Davis apparently did not.

### B.

Davis and Hickey were charged by a federal grand jury in a one-count indictment with aiding and abetting each other in the possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Prior to trial, Davis moved to dismiss the indictment, alleging selective prosecution in violation of his due process and equal protection rights. The district court denied the motion, finding that Davis' indictment was an exercise of valid prosecutorial discretion. The case went to trial in June 1992 against only Davis, because Hickey was a fugitive. Maddux and Hughes testified at the trial to the circumstances of Davis' arrest, and Hughes testified to the statements Davis made following his arrest. Over objection, Beadnell testified to his history of buying crack from Davis and Hickey. Davis was thereafter convicted by the jury.

In September 1992, prior to sentencing, Davis moved for a new trial based on the newly discovered evidence that Hughes had resigned from the police force one month earlier when a fellow officer reported him for planting drugs on a suspect. In response to Davis' motion, the district court ordered an evidentiary hearing, at which extensive proofs were taken regarding the allegations of wrongdoing by Hughes. The court denied the motion for new trial, finding that Davis had presented new evidence that could not have been discovered earlier, but also finding that it was, at best, impeachment evidence that would not likely result in an acquittal. Davis was sentenced to a 210–month term of imprisonment, to be followed by a six-year term of supervised release.

### II.

#### A. Denial of Motion to Dismiss for Selective Prosecution

■ Davis contends that the district court erred in denying his motion to dismiss the indictment for alleged selective prosecution. Davis claims that he was indicted because he refused to help the police following his arrest, and thus was made subject to the much harsher federal penalties for his drug offense. In support of this claim, Davis relies on Hughes' testimony that Davis could have provided information on as many as 25 more people because he was not yet known as an informant. On appeal, Davis does not claim, as he did in the district court, that he was singled out for prosecution in federal court because his uncle had pled guilty as a drug kingpin in federal court.

■ Davis' selective prosecution claim merits only brief discussion. As this court has recognized, a prosecutor has great discretion in determining whether or not to prosecute and what charge to file, so long as there is probable cause to believe that an offense has been committed. *United States v. Allen,* 954 F.2d 1160, 1166 (6th Cir.1992) (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). While a prosecutor's exercise of discretion may not be based on a defendant's race, sex, religion, or on his exercise of a statutory or constitutional right, a prosecutor may properly base his decision on the penalties available upon conviction when determining what offense will be charged. *Allen,* 954 F.2d at 1166 (citing *United States v. Andersen,* 940 F.2d 593, 596 (10th Cir.1991); and *United States v. Batchelder,* 442 U.S. 114, 125, 99

S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979)). Referrals by states for federal prosecution need not be controlled through express policy so long as prosecutors are not acting as mere rubber stamps for charging decisions made by law enforcement. *Allen,* 954 F.2d at 1166. The ultimate decision on whether to charge a defendant rests with prosecutors and, absent evidence to the contrary, the court will not assume that prosecutors are acting as rubber stamps. *United States v. Andersen,* 940 F.2d 593, 597 (10th Cir.1991).

■ Davis offered no evidence that the decision to prosecute him was based on his religion, sex, or race, or because of his exercise of a constitutional right. The fact that a greater sentence will result from a federal conviction than from a state conviction alone does not provide a basis to challenge an indictment. *Allen,* 954 F.2d at 1166; *United States v. Carter,* 953 F.2d 1449, 1461–62 (5th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992); *Andersen,* 940 F.2d at 596. While Davis contends that his federal prosecution resulted from his refusal to assist the local police in their drug enforcement efforts, he offers no evidence in support of this claim. Absent convincing evidence, this court will not assume that the federal prosecutor was acting as a rubber stamp for the charging referrals or suggestions made by the local police. Davis' claim of error has no merit.

**B. Evidence of Davis' Prior Drug Sales to Beadnell**

■ The district court found the evidence of Davis' 30 to 40 prior crack sales to Beadnell admissible under Fed.R.Evid. 404(b) [1] on the issues of intent to distribute, knowledge and absence of mistake, and further found that the probative value of the evidence outweighed its prejudicial effect under Fed. R.Evid. 403. [2] At Davis' request, the district

court gave a limiting instruction to the jury, and Davis does not challenge that instruction on appeal.

Davis neither denies that the prior sales to Beadnell occurred, nor challenges the district court's conclusion that the evidence of the prior sales was relevant to intent to distribute, an element of the offense with which he was charged. Davis candidly states that his trial strategy was to attempt to show that he possessed the crack cocaine for personal use. In similar settings, this court has affirmed the admission of evidence of other drug transactions. *United States v. Gessa,* 971 F.2d 1257, 1261–62 (6th Cir.1992) (*en banc*) (evidence of prior trips to the Bahamas to obtain cocaine probative of defendant's ability and opportunity to participate in an importation scheme); *United States v. Robison,* 904 F.2d 365, 368 (6th Cir.), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990) (evidence of prior sales by defendant occurring five months before alleged conspiracy began admissible to counter defendant's claim that he was only a user of drugs); *United States v. Rodriguez,* 882 F.2d 1059, 1064–65 (6th Cir.1989), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990) (evidence of undercover officers' purchase of cocaine from person who obtained drugs from defendant admissible to show defendant's intent to distribute cocaine nine days later). As in the cited cases, we agree that the evidence was relevant to a permissible Rule 404(b) issue, intent, and find no abuse of discretion in the district court's conclusion that the challenged evidence was more probative than prejudicial, especially in light of the limiting instruction given to the jury.

■ Davis' principal contention is that the prior sales to Beadnell were not sufficiently similar to the offense with which he was charged to establish his predisposition to

---

1. Rule 404(b) provides:

   **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

2. Rule 403 provides:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

commit the offense, and that admission of the evidence was therefore error. Davis relies on *United States v. Blankenship*, 775 F.2d 735 (6th Cir.1985), where the court addressed the extent to which the government may use evidence of other crimes. or acts to establish predisposition on the part of the defendant who admits the acts charged in the indictment, but relies on the defense of entrapment. Davis' argument fails due to his erroneous contention that the prior sales to Beadnell did not resemble the factual circumstances of the offense with which he was charged. Moreover, *Blankenship* has no applicability to the case before this court, where the defense of entrapment was not asserted and Davis' predisposition to commit the offense was therefore not an issue.

The district court's admission of the challenged evidence was not error.

## C. Denial of Motion for New Trial

■ Rule 33 of the Federal Rules of Criminal Procedure provides in pertinent part that the "court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." The decision to grant or deny a motion for new trial rests within the district court's sound discretion, and this court will not reverse absent a clear abuse of discretion. The defendant bears the burden of proving that a new trial should be granted. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir.1991). In order to obtain a new trial on newly discovered evidence grounds, the defendant must establish that: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal. *Id.* (citing *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir.1986), *cert. denied*, 484 U.S. 859, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987)).

■ In response to Davis' motion for a new trial, based upon the disclosure of Detective Hughes' conduct in another case, the district court ordered Davis' sentencing be postponed and scheduled an evidentiary hearing. Prior to that hearing, the court ordered the government to disclose any evidence that Hughes had planted evidence, and granted Davis' motion to issue a subpoena requiring the officer who had reported Hughes' alleged misconduct to appear and testify.

Six witnesses testified at the evidentiary hearing. Davis' witnesses included the police officer who had reported Hughes, and an informant who testified that Hughes had arrested him and had planted drugs on him as well. The officer also testified regarding Hughes' seizure of autos and alleged acceptance of money for the return of the autos. However, no evidence was presented regarding illegalities or improprieties in Davis' arrest or trial.

The government called both Maddux and Police Chief Snyder to demonstrate that the government's case was not dependent on Hughes' testimony. Maddux testified that Beadnell supplied information to him alone, and that Maddux had not informed Snyder or Hughes where they were going until the three officers were in the car on the way to the Beadnell home. Maddux confirmed that he saw a piece of cocaine fall from Davis' mouth, although he did not see where it fell on the floor.[3] Snyder, who had not testified at trial, confirmed that he saw the cocaine fall from Davis' person to the floor and also saw Hughes pick up the cocaine. A federal agent testified, and refuted the informant's testimony regarding the circumstances of his arrest.

■ District Judge R. Allan Edgar thoroughly investigated the grounds advanced by Davis in support of his motion for a new trial. We agree with Judge Edgar's conclusion that the evidence relied on by Davis was in fact newly discovered and could not have been discovered earlier. We also agree that the evidence of Hughes' actions in unrelated cases was useful only for impeachment and was not material. Two independent witness-

---

**3.** Maddux also refuted the allegation that Hughes had wrongfully obtained money for the return of seized automobiles.

es testified to seeing cocaine fall from Davis' person, and Davis himself admitted to having purchased crack cocaine, and to having swallowed rocks of crack as the police entered the house.

As the district court noted, the mere existence of impeaching evidence does not warrant a new trial, particularly when the government would not need to call Hughes in a retrial of the case. For the same reasons, we agree with the court's conclusion that Hughes' alleged involvement in planting drugs in unrelated cases would not likely produce an acquittal in this case if it were retried. In sum, we find no abuse of discretion in the district court's denial of Davis' motion for a new trial, and therefore affirm his conviction.

### D. Career Offender Status for Sentencing

■ The district court concluded that Davis was a career offender, a finding that resulted in a total offense level of 32 and a criminal history category of VI, with a permissible sentencing range of 210–262 months. Davis was sentenced to 210 months. He challenges his career offender status, contending that his prior drug convictions are related to each other, and do not constitute two separate felonies.

Since Davis was sentenced in November 1992, the 1992 Sentencing Guidelines apply to this case. 18 U.S.C. § 3553(a)(4). Pursuant to U.S.S.G. § 4B1.1, a defendant is a career offender if (1) he was at least 18 years old at the time of the offense; (2) the instant offense of conviction is a felony and is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. In order to be counted as separate prior felony convictions, the sentences for the convictions must be "unrelated" within the meaning of U.S.S.G. § 4A1.2(a)(2). Application note 3 to this section states: [4]

*Related Cases.* Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2, comment (n. 3).

On February 6, 1991, Davis pled guilty to a total of four charges for selling cocaine, as set forth in three separate indictments. The first indictment charged Davis with cocaine sales on August 29 and September 22, 1989; the second indictment charged Davis with selling cocaine on April 1, 1990; and the third indictment charged Davis with selling cocaine on May 5, 1990. Davis was sentenced on all charges on February 6 to separate nine-year terms of imprisonment, but the three judgments of conviction all provided that the sentences were to run concurrently.

■ Davis contends that, because he pled guilty and was sentenced on all of the state charges on the same day, the sentences were "consolidated" within the meaning of application note 3 to section 4A1.2. Davis also contends that he was not arrested after the August 29, 1989, sale or after either of the 1990 sales, and that no "intervening arrest" occurred. The district court correctly noted, however, that Davis' career offender status depended upon whether he had two prior felony convictions, and that the government was not obligated to demonstrate that each state judgment of conviction arose from a separate arrest. While it is unclear whether Davis was arrested after the first, third, or fourth cocaine sale, the record *is* clear that Davis was arrested and posted bond, after the September 22, 1989, sale. Consequently, an arrest intervened between the offenses charged in the first indictment and

---

4. Pursuant to U.S.S.G. § 4B1.2(3) and application note 4, the two prior felony convictions must have sentences that are counted separately under U.S.S.G. §§ 4A1.1 and 4A1.2. Section 4A1.2(a)(2), in turn, instructs that sentences im-

posed in unrelated cases are to be counted separately, while sentences imposed in related cases are not. When cases are "related" is determined with reference to the comment quoted in the text.

the offenses charged in the second and third indictments. Under application note 3 to section 4A1.2, the sentences imposed for those offenses were therefore unrelated, with the result that career offender status was properly imposed.[5]

**AFFIRMED.**

**5.** In a pro se reply brief, Davis argues that the sentencing guidelines imposing career offender status, with a resulting sentencing range of 210–262 months, are unconstitutional as applied, citing *United States v. Spencer,* 817 F.Supp. 176 (D.D.C.1993). We find no constitutional infirmity in Davis' sentence, and decline to follow *Spencer.*