89 F.3d 836
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marion Earl HUPP, Defendant-Appellant.
 No. 95-3515.
 United States Court of Appeals, Sixth Circuit.
 June 10, 1996.
 
 1
 Before: NORRIS and COLE, Circuit Judges; and HULL, District Judge.[1]
 
 
 2
 HULL, District Judge.
 
 
 3
 The defendant, Marion Earl Hupp, appeals his conviction on a three count indictment charging him with conspiracy to possess with the intent to distribute methamphetamine, attempted possession with the intent to distribute methamphetamine, and use of a communication facility to distribute more than 100 grams of methamphetamine. Hupp's motion for acquittal and for a new trial were denied and he was sentenced to serve a term of 360 months on Counts 1 and 2; a 48 month term of imprisonment on Count 3, all to be served concurrently; and a 5 year term of supervised release.
 
 BACKGROUND
 
 4
 After the defendant was charged on November 1, 1994 in a three-count superseding indictment, the trial court denied the defendant's motion to suppress evidence regarding searches that were conducted in connection with three search warrants, as well as the search conducted incident to his arrest.
 
 
 5
 The defendant's case proceeded to trial on December 13, 1994, during which the defendant objected to various evidentiary rulings made by the trial court. On December 15, 1994, the jury returned a verdict of guilty on all three counts of the indictment.
 
 
 6
 On December 22, 1994, defense counsel received a copy of a notice of a bond violation report regarding Jeffrey Allender, a co-defendant and government witness. This bond violation report, which was not available at the time of trial, indicated that Allender had had a positive drug screen shortly before trial. The defendant then filed a supplemental motion for new trial based on newly discovered evidence. The motion for new trial and/or for judgment of acquittal was denied by the trial court on January 6, 1995.
 
 
 7
 The defendant was sentenced on April 21, 1995, and he filed his notice of appeal on April 27, 1995. The defendant has raised five issues on appeal which will be addressed separately, both factually and procedurally.
 
 1. MOTION TO SUPPRESS
 
 8
 On October 7, 1994, the defendant filed a motion to suppress evidence obtained during the execution of separate search warrants which were obtained on August 2, 1994, August 9, 1994, and August 23, 1994, as well as any evidence obtained as a result of the defendant's arrest on August 3, 1994. The initial search warrant, which was executed on August 3, 1994, was obtained for an Express Mail Package addressed to Jeff Allender, 406 Florence Street, Apt. # 2, Belpre, Ohio 45716, case number M-2-94-241-A. The search warrant executed on August 10, 1994 was for Hupp's residence at 10320 Pleasant Valley Road, Frazeysburg, Ohio, case number M-2-94-259-K. The subject of the third search warrant in question was the residence of Anthony Messina, however, the validity of this search is not raised on appeal. Without reaching the issue of standing, the trial court denied the defendant's motion to suppress on November 2, 1994. The defendant contends there was no probable cause for the search of the Express Mail package, that evidence obtained in regard to the search of this package was illegally obtained, and because there was no probable cause for the first search of the Express Mail package, the searches that were subsequently conducted of his person and his residence are tainted. In the alternative, the defendant contends that the information contained in the affidavit attached to the search warrant for his residence did not give rise to probable cause to believe that the items sought would be found at the residence.
 
 
 9
 Although the defendant alleges that the issue of standing has been waived, the government specifically raised that issue in its "Memorandum Contra Motion to Suppress" filed October 27, 1994. In the trial court's order dated November 2, 1994, which denied the defendant's motion to suppress, the trial court indicates that the government "has acknowledged that defendant has standing to contest the search of defendant's residence." However, the trial court also notes that the defendant "offers no facts in his motion which would indicate that he has standing to contest the search of the Express Mail Package or any of the other premises." The trial court concludes by stating that the court is addressing the arguments made by the defendant "without resolving the question of standing." The government has raised the issue of standing in its brief on appeal, and therefore this Court concludes that the issue of standing has not been waived but has been preserved on appeal.
 
 
 10
 It is the defendant's burden to establish standing to challenge a Fourth Amendment violation. Rakas v. Illinois, 439 U.S. 128, 139-140 (1978). To establish standing, the defendant must have "a legitimate expectation of privacy" in the items searched or seized. Rakas, 439 U.S. at 143; United States v. King, 55 F.3d 1193, 1195 (6th Cir.1995). This Court has previously found in United States v. McNeal, 955 F.2d 1067 (6th Cir.1992), cert. denied, 505 U.S. 1223 (1992), that a non-resident defendant cannot assert an apartment resident's Fourth Amendment privacy rights.
 
 
 11
 In this case, not only was the defendant a non-resident of the apartment, but he has failed to assert any privacy rights in the Express Mail package which was not addressed to him. Therefore, any violation of Allender's or Brown's Fourth Amendment rights which may have resulted from an illegal search of the Express Mail package addressed to Allender or of their apartment, did not inure to the defendant.
 
 
 12
 In United States v. Carter, 14 F.3d 1150 (6th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 156, 130 L.Ed.2d 94 (1994), this Court concluded that if a defendant has no standing, evidence that may have been illegally seized as to an individual who has a possessory interest, can be used against the defendant. Because the defendant has failed to establish standing, it is immaterial that the evidence seized may have been the "fruit of the poisonous tree," and this evidence can be used against him.
 
 
 13
 Whether or not the search violated the Fourth Amendment insofar as other individuals with possessory interests were concerned, the evidence seized could properly be used against the defendant, and the defendant's arrest was proper and the search of his person incident to that arrest was valid based upon the belief that the defendant had committed a crime. It also follows that the evidence obtained from the search of the Express Mail package and the Brown/Allender apartment was properly used in the probable cause determination for the search warrant obtained in regard to the search of the defendant's residence.
 
 
 14
 The defendant also contends, as an alternative basis to challenge the search of his residence, that the information contained in the affidavit attached to the search warrant for his residence did not give rise to probable cause to believe that the items sought would be found at his residence. However, at the time of the issuance of the warrant for the Pleasant Valley Road address, Inspector Barbee had the evidence from the search of the Express Mail package as well as information that there were a number of earlier shipments to Hupp; he notes in his affidavit the evidence of $3700.00 cash, a receipt for $2120.00 paid in cash, and keys for a safe deposit box found on Hupp during the search of his person following his arrest; Hupp had attempted to conceal the Pleasant Valley Road address by giving officers his brother's address instead of his own; and a search of Hupp's safe deposit box had revealed that it was empty.
 
 
 15
 In issuing a valid search warrant under the Fourth Amendment, the judge "is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In determining probable cause, "opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation." United States v. Motz, 936 F.2d 1021, 1024 (9th Cir.1991) (alteration in original) (quoting United States v. Burnes, 816 F.2d 1354, 1357 (9th Cir.1987)). Given the totality of the circumstances in the affidavit in support of the search warrant for the defendant's residence, including the opinions and conclusions of the agent, there was a fair probability that contraband or evidence of a crime would be found at the defendant's residence, and the issuance of this search warrant did not violate the defendant's Fourth Amendment rights.
 
 2. EVIDENTIARY RULINGS
 
 16
 (A) Limitations on Cross Examination of Allender and Brown.
 
 
 17
 The trial record reflects that defense counsel had an ample opportunity to cross-examine both Allender and Brown in regard to their plea agreements, even though the Court restricted defense counsel at the point that it appeared that counsel was misstating the agreements. Although the Sixth Amendment guarantees a defendant the right to confront the witnesses against him, that guarantee only extends to "an opportunity for effective cross-examination not cross-examination in whatever way, and to whatever extent the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 678-679 (1986). Based upon this trial record, the defendant's Sixth Amendment rights were not violated, even though defense counsel was not permitted to cross-examine Allender and Brown to whatever extent he may have wished.
 
 
 18
 (B) Admission of Testimony of a Detective About Drug Practices in the Community.
 
 
 19
 (C) Admission of Testimony of the Postal Inspector Regarding Drug Package Profiling Methods.
 
 
 20
 Based upon investigative experience, an agent or police officer may be qualified to testify regarding the "modus operandi" of illegal drug trafficking. Cf. United States v. Seelig, 622 F.2d 207, 213-214 (6th Cir.1980), cert. denied, 449 U.S. 869 (1980). This testimony is not lay testimony, but rather permissible opinion testimony based on the officer's expertise.
 
 
 21
 In this case, the defendant contends that it was an error for the trial court to admit testimony regarding drug practices in the community as well as drug package profiling methods. Both of these areas would be technically classified as "modus operandi."
 
 
 22
 Detective Moon testified that he has been a detective for two years, but has been employed by the Washington County Sheriff's Department for a total of thirteen years. He testified that there had been no cases involving methamphetamine in Washington County for the last two years, and that road units have never brought any drugs in to test for methamphetamine. He stated that the main drugs of choice in his county would be marijuana and cocaine, with LSD becoming more prevalent. Based upon his experience as a detective, he was qualified to testify about the "modus operandi," or the usual drugs sold illegally in his county.
 
 
 23
 Inspector Russell H. Barbee, who has been employed by the postal service for a total of 17 years, six of which have been as a postal inspector, was also permitted to testify over the objection of the defendant in regard to the drug package profiling methods of the postal service. This testimony was also clearly admissible in regard to "modus operandi," or typical package traits found in regard to packages containing illegal drugs.
 
 
 24
 (D) Admission of Post-Arrest Statements of Allender and Brown.
 
 
 25
 Although the trial court admitted the post-arrest statements of Allender and Brown under Rule 801(d)(1)(B) of the Federal Rules of Evidence, the defendant maintains that the trial court abused its discretion in admitting these statements, because the defendant had not "opened the door" to their admission. However, an allegation of recent fabrication or improper motive need not be expressly stated. United States v. Hamilton, 689 F.2d 1262, 1273 (6th Cir.1982), cert. denied, 459 U.S. 117 (1983). When counsel for the defendant implies that a witness' testimony has been colored in exchange for a favorable plea agreement, a prior consistent statement made before the plea agreement was negotiated is admissible under Rule 801(d)(1)(B). United States v. Smith, 746 F.2d 1183, 1185 (6th Cir.1984); Hamilton, 689 F.2d at 1274. Therefore, the prior consistent statements of Allender and Brown were properly admitted to rebut the charge of improper motive created by defense counsel's extensive cross-examination in regard to their favorable plea agreements. Smith, 746 F.2d at 1185.
 
 3. JURY INSTRUCTION
 
 26
 As a third ground for reversal, the defendant contends that the reasonable doubt instruction given by the trial court minimized the government's burden of proof by use of the phrase "moral certainty." In Victor v. Nebraska, --- U.S. ----, 14 S.Ct. 1239, 1250, 127 L.Ed.2d 583, 599-600 (1994), the Supreme Court has held that the term "moral certainty" does not, in and of itself, render a "reasonable doubt" instruction unconstitutional. When taken in context, the phrase "moral certainty," is constitutionally permissible where the rest of the instruction "lends meaning to the phrase." Victor, 114 S.Ct. at 1247-1248.
 
 
 27
 In Victor, 114 S.Ct. at 1250, the Court, in examining the content of the instruction, goes on to state that "[i]nstructing the jurors that they must have an abiding conviction of the defendant's guilt does much to alleviate any concerns that the phrase moral certainty might be misunderstood in the abstract." In this case, the trial court specifically included the phrase "abiding conviction" as follows, "A reasonable doubt exists whenever, after the careful, entire and impartial consideration of all of the evidence in this case, the jurors do not feel an abiding conviction to a moral certainty that a defendant is guilty of the offense charged."
 
 
 28
 Therefore, the trial court's instruction on reasonable doubt when taken as a whole complies with Victor, and because it does not require a standard of proof below that which is required by the Constitution, this charge did not violate due process and is not grounds for reversal.
 
 4. MOTION FOR NEW TRIAL
 
 29
 After the trial in this matter concluded on December 15, 1994, the Assistant United States Attorney in this case received a notice of a bond violation on December 16, 1994 in regard to Jeffrey Allender. Allender's bond violation report indicated that on December 9, 1994, he tested positive for the use of marijuana and benzodiazapines. This report also indicated that Allender was to begin a drug treatment program on December 12, 1994. Allender had testified at trial on December 13, 1994, as follows:
 
 
 30
 Q. You use drugs?
 
 
 31
 A. Not any more.
 
 
 32
 Therefore, the defendant alleges that he should have been granted a new trial based on newly discovered evidence.
 
 
 33
 It is clearly settled that the decision of whether to grant a new trial is left to the sound discretion of the trial court, and this Court will not reverse the trial court's decision absent a clear abuse of discretion. United States v. Pierce, 62 F.3d 818, 823 (6th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 965, 133 L.Ed. 886 (1996); United States v. Seago, 930 F.2d 482, 488 (6th Cir.1991). It is the defendant's burden to prove that a new trial should be granted. Pierce, 62 F.3d at 823; United States v. Davis, 15 F.3d 526, 531 (6th Cir.1994) (citing Seago, 930 F.2d at 488). In order to obtain a trial on newly discovered evidence grounds, the defendants must establish that:
 
 
 34
 (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence likely would produce an acquittal.
 
 
 35
 Seago, 930 F.2d at 488.
 
 
 36
 The United States Supreme Court has also held that new evidence that is merely cumulative or impeaching is not an adequate basis for a grant of a new trial. Mesarosh v. United States, 352 U.S. 1 (1956).
 
 
 37
 The positive drug screen of a government witness is generally not material to the crime, but is for impeachment. United States v. Word, 806 F.2d 658 (6th Cir.1986), cert. denied, 480 U.S. 922 (1987). In this case, Allender was asked a series of questions about his use, possession, and sale of drugs. He readily admitted using drugs, as well as selling speed, cocaine, and marijuana. He also verified that on the day that the search warrant was executed, speed and marijuana were found in his apartment.
 
 
 38
 Therefore, although evidence of a positive drug screen would have been impeaching, it was clearly cumulative, because the witness was already impeached at trial by the same type of evidence.[2] Because the newly discovered evidence asserted by the defendant was not material to the crime, but was merely cumulative and impeaching, it was not an abuse of discretion for the trial court to deny the defendant's motion for new trial.
 
 5. SENTENCING ISSUE
 
 39
 The defendant contends that he should not have received a two-point enhancement for an aggravating role in the offense as being a manager or supervisor of one or more participants pursuant to § 3B1.1(c) of the United States Sentencing Commission Guidelines. Control and organization are key determinants in regard to the application of § 3B1.1. United States v. Rowley, 975 F.2d 1357, 1364 (8th Cir.1992).
 
 
 40
 According to Allender's trial testimony, at various times he and his girlfriend Jody Brown (who is also defendant Hupp's daughter), received express mail packages from California containing methamphetamine, addressed to them at their apartment. Allender stated that these packages actually belonged to the defendant, that the defendant would tell them that a package was coming, and they were to stay home and sign for the package. They would not open the packages, but would wait for the defendant to retrieve them. The packages were never opened on the premises except on one occasion. In exchange for their services, Allender testified that the defendant would give them "a couple of spoonfuls" of speed. Jody Brown also confirmed these details in her testimony.
 
 
 41
 Based on the testimony of Jeff Allender and Jody Brown, the defendant exercised control over Allender and Brown who were participants in the organization that he established in order to receive express mail packages. Therefore, the trial court's assessment of a two-point enhancement for an aggravating role in the offense, as being a manager or supervisor of one or more participants, was appropriate under § 3B1.1(c) of the United States Sentencing Commission Guidelines.
 
 CONCLUSION
 
 42
 For the foregoing reasons, we affirm the defendant's conviction and sentence.
 
 
 
 [1]
 The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [2]
 See, e.g., United States v. Maloney, 71 F.3d 645, 653 (7th Cir.1995); United States v. Quintanilla, 25 F.3d 694, 699 (8th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 457, 130 L.Ed.2d 365 (1994); United States v. Kozinski, 16 F.3d 795, 818 (7th Cir.1994); United States v. Deluna, 10 F.3d 1529, 1535 (10th Cir.1993); United States v. Marashi, 913 F.2d 724, 732-33 (9th Cir.1990)