*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0435p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 07-5377

TERRENCE TYRONE SMITH,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 06-00084—David L. Bunning, District Judge.

Argued: October 22, 2008

Decided and Filed: December 2, 2008

Before: BOGGS, Chief Judge; and MERRITT and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Wende C. Cross, W. C. CROSS & ASSOCIATES, Cincinnati, Ohio, for Appellant. James E. Arehart, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Wende C. Cross, W. C. CROSS & ASSOCIATES, Cincinnati, Ohio, for Appellant. Charles P. Wisdom, Jr., Andrew Sparks, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

BOGGS, C. J., delivered the opinion of the court, in which GRIFFIN, J., joined. MERRITT, J. (p. 8), delivered a separate dissenting opinion.

---

## OPINION

---

BOGGS, Chief Judge. Defendant Terrence Tyrone Smith appeals from the district court's denial of his motion to suppress the evidence underlying his guilty plea to two counts of possession with intent to distribute five grams or more of cocaine base. Smith also appeals from the district court's sentence of 240 months, based in part on the court's determination that Smith was a career offender. We hold that police officers had probable cause to arrest Smith and search him incident to the arrest, and that Smith was a career offender under the Sentencing Guidelines. Therefore, we affirm.

I

A

On March 22, 2005, Kentucky State Police (KSP) executed a controlled buy of 45 grams of crack cocaine from Smith in Lexington, Kentucky. The buy "utilized an undercover police officer and a cooperating confidential source" (Source A).

On or about April 25, 2005, Source A informed KSP that Smith was "on the way to Hazard" with crack cocaine. The police arranged for a second confidential source (Source B) to sit with KSP at the outskirts of Hazard and identify Smith's vehicle, if and when Smith entered Hazard. Source B was the girlfriend of Source A, and was familiar with Smith, Smith's history, and Smith's vehicles. Police deemed Source A and B to be "factual and believable," because they had worked "about 250 drug cases" around the years 2004 and 2005. Source B identified Smith's vehicle as it entered Hazard. KSP Trooper Miller, who operated a special canine unit and was advised about Smith's suspected drug activity, stopped Smith's vehicle because it failed to signal at a turn, at approximately 1:00 p.m. Smith was the driver of the vehicle; Ronnie Campbell was a passenger. Smith did not dispute that he failed to signal a turn.

When Trooper Miller approached the vehicle and spoke to the occupants, he noticed that Smith's zipper was unzipped and that he kept "tugging and pulling" at his crotch area. Miller received Smith's permission to search the vehicle, and proceeded to walk his canine, "Balco," around the exterior of the vehicle before searching the interior. Balco did not "alert." Miller also "conferred separately with passenger Campbell," who informed Miller that "the dope" was on Smith's body. Detective Fugate recalled Miller stating that Campbell specifically indicated Smith's crotch area as the place where drugs were hidden. However, in his telephone testimony at the suppression hearing, Campbell denied making any statements about Smith's possession of drugs.

Miller then walked Balco around Smith. Although Balco did not alert, Miller testified that the dog's "demeanor" changed when he stuck his snout in Smith's crotch area. Miller stated that Balco is not trained to alert – to bite and scratch at the area where drugs are hidden – at a human being, and the change of the dog's demeanor suggested to Miller that Campbell's information about the location of the drugs was accurate. Balco also did not alert inside the vehicle, but showed the same change of demeanor at the driver's seat. Campbell consented to a search of his person, while Smith did not, specifically refusing to drop his pants to permit Miller to check for hidden drugs.

At approximately 1:30 to 1:45 p.m. Miller contacted Detective Fugate, who sought to secure a state search warrant. While Fugate pursued the warrant, Miller transported Smith and Campbell to a KSP post, placing handcuffs on Smith at some point prior to delivering him to the post. A warrant for the search of the vehicle and of Smith was issued at 3:01 p.m., pursuant to the following affidavit:

> Affiant has been an officer in the aforementioned agency for a period of 10 years and the information and observations contained herein were received and made in his capacity as an officer thereof.
>
> On the 25 day of April, 2005, at approximately 0800 a.m., affiant received information from: A KSP cooperating witness who state they received information that Terrence T. Smith was traveling to Hazard Kentucky on the same with with [sic] at least one ounce of "Crack" Cocaine.
>
> Acting on the information received, affiant conducted following independent investigation: On 03-22-05, units from the Hazard HIDTA Drug Task Force, purchased two ounces of "Crack" Cocaine From Terrence T. Smith using a

cooperating witness.  Terrence T. Smith has (2) two drug related arrest [sic].

Approximately 34.1 grams of crack cocaine was discovered inside a sock hidden in Smith's underwear.

B

Smith was indicted on two counts of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. 841(a)(1).  On October 20, 2006, Smith moved to suppress the evidence seized as a result of the April 25 traffic stop and subsequent search at the KSP post. The district court denied the motion on November 22, 2006.  The court agreed that Detective Fugate's warrant affidavit did not establish probable cause, but that a *Leon* good-faith exception saved the evidence from suppression.  Moreover, the district court determined that the officers had probable cause to arrest Smith and could lawfully search him incident to the arrest.  On March 7, 2007, Smith entered a conditional guilty plea to both counts, reserving the right to appeal the denial of his motion to suppress and any sentence above 120 months.  At a March 7, 2007 sentencing hearing, the district court determined that Smith was a career offender as a result of two qualifying unrelated convictions.  Accordingly, Smith was sentenced to 240 months of imprisonment, below the advisory Guidelines range of 292 to 365 months.

II

A

In reviewing a district court's decision on a suppression motion, we review findings of fact for clear error and legal conclusions de novo.  *United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008).  "When considering the denial of a suppression motion, we must view the evidence in the light most favorable to the government."  *United States v. Montgomery*, 377 F.3d 582 (6th Cir. 2004).  In addition, "[w]e may affirm a decision of the district court if correct for any reason . . . ." *Ibid.* (internal quotation marks omitted).

Smith argues that the crack cocaine discovered in the course of the April 25 search should be suppressed, because the warrant affidavit authorizing the search was "bare-bones," making a *Leon* good-faith exception inapplicable.  The district court held that although Detective Fugate's affidavit fails to establish probable cause, the *Leon* good-faith exception "validates the search and the officers' reliance on an otherwise invalid search warrant."

B

Warrantless searches violate the Fourth Amendment's guarantee against unreasonable searches and seizures, with "only a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).  A search "incident to a lawful arrest" is among the exceptions.  *Chimel v. California*, 395 U.S. 752, 762-63, (1969).  Whether or not a *Leon* good-faith exception saves the evidence discovered by police officers acting on a deficient warrant affidavit is immaterial, if officers had probable cause to arrest Smith and search him incident to the arrest.  We hold that there was probable cause to arrest Smith, and that he was lawfully searched incident to his arrest.

First, to determine whether probable cause exists to arrest a suspect, "we must determine whether at that moment the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that [a suspect] had committed or [was] committing an offense." *United States v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006) (internal citations and alterations omitted).  Shortly after the traffic stop, Trooper Miller knew the following facts:

1. A controlled buy of crack cocaine from Smith took place on March 22, 2005, involving Source A.

2. On the day of the traffic stop, according to Source A, Smith was supposed to be on the way to Hazard, transporting drugs.

3. Smith's vehicle was identified upon entry into Hazard by Source B.

4. Source A and B had a long track record of reliability.

5. After the stop, Smith's pants were unzipped and he was "tugging and pulling" at his crotch; on the basis of his experience, Miller knew that drug traffickers commonly hide contraband in the crotch area.

6. Passenger Campbell informed Miller that Smith had drugs hidden in his crotch area.

7. Miller's search of the vehicle based on Smith's consent yielded no drugs, but Balco changed "demeanor" when sniffing Smith's crotch, and a similar demeanor change when sniffing Smith's seat in the car.

It is true that in his telephone testimony at the suppression hearing Campbell denied making any statements about Smith's possession of drugs and it is true that Balco did not actively "alert" on Smith. These facts notwithstanding, the magistrate judge found and the district court agreed that Campbell's inconsistent telephone testimony was not believable and that Trooper Miller's explanation of Balco's expected behavior was convincing. These factual assessments of the district court are far from clearly erroneous. Therefore, the facts and information known to Miller by the time he decided to transport Smith to a KSP post were sufficient to warrant a prudent person in believing that Smith has committed an offense.

Second, although Trooper Miller did not think he was arresting Smith, the district court concluded that transporting Smith to a KSP post in handcuffs constituted an arrest. We have held that "a clear deprivation of liberty caused by law enforcement officers without formal words is nonetheless an arrest." *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 590 (6th Cir. 1994) (internal quotations marks and alterations omitted). As we have had occasion to explain, determining whether an arrest occurred "is a fact-sensitive inquiry, depending on the totality of the circumstances[,] [for which a] court is to consider a variety of factors," including "transportation of the detainee to another location," and "significant restraints on freedom of movement involving physical confinement or other coercion." *United States v. Williams*, 170 F. App'x 399, 403 (6th Cir. 2006). We have also noted that under most circumstances, the police "cross the line" between an investigatory detention and a custodial arrest, when a person is "remove[d] from . . . [a] place in which he is entitled to be and transport[ed] . . . to the police station." *United States v. Butler*, 223 F.3d 368, 374 (6th Cir. 2000). In this case, handcuffing Smith and transporting him to a police post, where he remained handcuffed for at least an hour and a half, rises to the level of arrest.

Finally, the search of Smith's person at the KSP post within a few hours of his arrest constituted a lawful search incident to the arrest.[1]  The Supreme Court held that searches of persons incident to a lawful arrest require "no additional justification," beyond the establishment of probable cause for arrest.  *United States v. Robinson*, 414 U.S. 218, 235 (1973).  "It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."  *Ibid.*  Furthermore, the Supreme Court has made clear that a lawful search of the person incident to the arrest need not take place immediately after or at the site of the arrest: "It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention."  *United States v. Edwards*, 415 U.S. 800, 803-04 (1974).  Once a lawful arrest is made, the suspect and any "effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest . . . and the taking of the property for use as evidence."  *Id.* at 807.  *See also United States v. Craig*, 198 F. App'x 459, 463 (6th Cir. 2006) (holding that "[t]he fact that [defendant] was not thoroughly searched until he was booked is immaterial," and did not render a  personal search of the incident unlawful)*; United States v. Dede*, 83 F. App'x 732, 738 (6th Cir. 2003) (holding that a search conducted after suspects have been in custody for three hours was a lawful search incident to the suspects' arrest).

The fact that KSP officers made an effort to obtain a search warrant does not compromise the lawfulness of the search.  It is *"the fact* of the lawful arrest" that validates the search, *Robinson*, 414 U.S. at 235, not the officers' subjective belief about the occurrence of the arrest or the necessity of a warrant.  *See, e.g.,  Dede*, 83 F. App'x at 73 (stating that officers' "reluctance" to search lawfully arrested suspects prior to securing a warrant "does not require us to examine the adequacy of the warrants," since the search was fully legitimated by the arrest).

III

We review the sentencing court's interpretation of the Sentencing Guidelines and statutes de novo and its factual findings for clear error.  *United States v. King*, 516 F.3d 425, 427 (6th Cir. 2008).

The Guidelines treat adult defendants as career offenders if the instant conviction is for a felony that is a crime of violence or a controlled substance offense, and if the defendant has "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G §4B1.1(a).  Smith has three qualifying convictions for controlled substances offenses, dating from May 5, 1997, May 6, 1997, and March 12, 1998, respectively. Smith argues that because all of his three convictions were consolidated for the purposes of sentencing and the sentences were imposed on the same day, all should be treated as related.  The district court disagreed, deciding that the two May 1997 offenses were related, but that the March 1998 offense was unrelated due to an intervening arrest: Smith committed the March 1998 offense while he was on bond, after he was arrested for his May 1997 offenses.  Because the two qualifying convictions were controlled substance offenses, the district court properly determined that Smith is a career offender.

---

[1]The record does not specify exactly how much time passed between Smith's effective arrest and his search. However, we may surmise that it was no less than an hour and a half and probably no more than a couple of hours: Trooper Miller transported Smith to the KSP post only after he contacted Detective Fugate at 1:30-1:45 pm, and the search warrant was authorized at 3:01 pm.  Smith was handcuffed and effectively arrested shortly after Miller contacted Fugate and he was searched not long after the search warrant was issued.

In 2005, §4A1.2(a) of the Sentencing Guidelines stated: "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence . . . ." U.S.S.G. §4A1.2(a)(2). The then-current Application Note 3 explained how to determine whether cases are related:

> Prior sentences are *not considered related if they were for offenses that were separated by an intervening arrest* (i.e., the defendant is arrested for the first offense prior to committing the second offense). *Otherwise*, *prior sentences are considered related if they resulted from offenses that* (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) *were consolidated for trial or sentencing*.

(emphasis added). Smith's proposed reading of this provision contravenes its plain meaning. It is unambiguous that prior sentences *must* be treated separately if they "were separated by an intervening arrest"; only "*otherwise*" – in absence of an intervening arrest – are cases consolidated for sentencing considered related. "Only if there was no intervening arrest may the court consider the factors that may 'otherwise' render prior sentences 'related.'" *United States v. Gale*, 468 F.3d 929, 936 (6th Cir. 2006) (internal quotation marks and citations omitted); *see also United States v. Davis*, 15 F.3d 526, 533 (6th Cir. 1994) (holding that because "an arrest intervened between the offenses charged in the first indictment and the offenses charged in the second and third indictments[,] [u]nder application note 3 to section 4A1.2, the sentences imposed for those offenses were therefore unrelated"); *United States v. Bradley*, 218 F.3d 670, 673 (7th Cir. 2000) (holding that "[a]pplication [n]ote 3 requires that if the criminal conduct is separated by arrests, the ensuing convictions are never considered related." (internal quotation marks omitted)).[2]　Therefore, the

---

[2]In dissent, Judge Merritt suggests that the rule of lenity requires an application of the current, amended version of the Sentencing Guidelines, which he believes is ambiguous on the effect of an intervening arrest. Courts have certainly applied the rule of lenity to the Sentencing Guidelines, as well as penal statutes. *See, e.g., United States v. Fuentes-Barahona*, 111 F.3d 651, 653 (9th Cir. 1997) (per curiam). However, as an initial matter, we do not think the rule of lenity justifies our retroactive application of Guidelines amended after the date of the defendant's sentencing. While a sentencing court is directed to apply a version of the Guidelines in effect on the *offense date* rather that those in effect on the *sentencing date*, if the latter would result in a violation of the ex post facto clause, U.S.S.G. §1B1.11, there is no comparable rationale or authority for applying a guidelines version effective *after* the date of sentencing. A remand for resentencing under the current version of the Guidelines would be a highly unusual application of the rule of lenity: it would suggest that any convict serving a properly-determined sentence may now appeal to this court for a reduction of his sentence under any provision of the Guidelines that was later amended. The Guidelines authorize such post-conviction reductions on the basis of an enumerated and limited set of amendments, of which the amendment at issue here (709) is not one. *See* U.S.S.G. §1B1.10.

Even if the current version of the Guidelines may somehow be applied retroactively in this case, no benefit would accrue to Smith. Effective November 1, 2007, §4A1.2(a)(2) was amended to read as follows:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

Judge Merritt suggests that the last sentence may be read as directly contradicting the second sentence, thereby creating ambiguity. We respectfully disagree. First, the natural reading of the amended §4A1.2(a) accords fully with the prior version of that section. Sentences are "*always*" separate if "separated by an intervening arrest." Only if there is no intervening arrest, do we go on to determine whether sentences are for offenses contained in the same charging instrument (A) or imposed on the same day (B): if sentences not separated by an intervening arrest *and* they fit the criteria of (A) or (B), only then do they count as a single sentence. Second, the rule of lenity is relevant only if there is "grievous ambiguity or uncertainty in the statute," and only if "after seizing everything from which aid can be derived, we can make no more than a guess as to" the meaning of the language at issue. *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998). Any ambiguity that could conceivably be perceived to exist in the amended Sentencing Guidelines is fully resolved by the official commentary by the Sentencing Commission:

district court properly calculated Smith's criminal history score, determined that he was a career offender, and imposed a reasonable 240-month sentence.

IV

The district court's denial of the motion to suppress evidence and the district court's imposed sentence are therefore AFFIRMED.

---

Under the amendment, *the initial inquiry will be whether the prior sentences were for offenses that were separated by an intervening arrest* (i.e., the defendant was arrested for the first offense prior to committing the second offense). If so, they are to be considered separate sentences, counted separately, and *no further inquiry is required*.

(emphasis added). U.S.S.G. Manual §4A1.2, Supp. App'x C (2008).

---

## DISSENT

---

MERRITT, Circuit Judge, dissenting.  In this case the district judge and my colleagues have found a way in the "career criminal" guideline to impose an ultra-severe sentence of 20 years for possession of a couple of ounces of cocaine base — demonstrating again a sentencing philosophy with which I disagree.

The sentencing judgment of 20 years in this case is not final and is now on appeal.  We should apply the current guideline, § 4A.1.2(a), unless it would violate the *ex post facto* clause (which all concede is not the case here since the guideline would benefit the defendant).  The last sentence of the revised § 4A.1.2(a) refers to the clause just above and says:  "Count any prior sentence covered by (A) or (B) as a single sentence."  Clause B, immediately above this clear language, states, "(B) the sentences were imposed on the same day."  Although left unmentioned and unclear in the majority opinion it is in fact completely clear and beyond purview that all three state "sentences were imposed on the same day" by the state court to run concurrently, namely, on October 26, 1999.  The state court considered them all together at one time and imposed a single, undifferentiated concurrent sentence.  I would read the text on the same day to mean what it says.  Nevertheless, the defendant's 10-year sentence was automatically increased by 10 more years under the Guideline grid as a result of the "career offender" finding that the state crimes were not to be considered to meet the test of "sentences imposed on the same day."

Our current sentencing law now requires a sentence "not greater than necessary," 18 U.S.C. § 3553(a) to comply with the purposes of punishment.  That version of the rule of lenity has not been considered here, and no one has suggested why a 20-year sentence for possession of a couple of ounces of cocaine base is "necessary" here.

There is not one case I can find supporting the majority's interpretation of the "on the same day" sentence of the newly amended § 4A.1.2(a); and no sentencing principle, purpose or goal of punishment is given for this ultra-severe sentence.  I would cut the sentence for this obese, previously addicted, 33-year-old black male who at the time of sentencing had custody of his several children.  This harsh sentence senselessly adds 10 more years of costs to the federal taxpayer and adds nothing to the goals of deterrence and rehabilitation.