GRIFFIN, Circuit Judge,
dissenting.
I join Section I (Validity of the Traffic Stop) of the majority’s opinion, but respectfully dissent from my colleagues’ analysis and holding regarding the subsequent search. In my view, the search did not violate defendant’s right to be free from “unreasonable” searches under the Fourth Amendment. Therefore, I would affirm the order of the district court denying defendant’s motion to suppress.
I.
The record reveals that Deputy Bemis initiated the stop at approximately 4:01 p.m. Bemis talked with Bonilla and his girlfriend, gathered their documents, and returned to his police vehicle at about 4:07 p.m. At that time, he called for back-up officers because he decided to conduct a “free air sniff’ of defendant’s vehicle. Bemis testified that he utilized the LEADS system approximately “[8] minutes into the traffic stop[,]” and that the other officers responded “probably 20 minutes into the traffic stop. Probably 12 minutes after [he] had asked for [backup].” He further testified that while waiting, he “was completing [his] forms .... and starting the traffic citation.”
When the other officers arrived at approximately 4:28 p.m., Bemis stopped writing the ticket, removed Bonilla’s girlfriend from the car, and placed her and Bonilla in separate police vehicles. As the majority acknowledges, at that time, Bemis had not completed writing the traffic citation. Maj. Op. at 694. Bemis testified that it usually took thirty to thirty-five minutes to issue an out-of-state driver a traffic ticket. Bemis began to deploy his drug dog around the vehicle roughly twenty-four minutes into his encounter with Bonilla — a time well within the thirty to thirty-five minutes necessary for the officer to have completed the traffic stop.
Bemis then walked his K-9 around Bon-illa’s vehicle to conduct a free-air sniff, which lasted only one minute. The record indicates that the back-up officers arrived at roughly 4:28 p.m., and that the K-9 first alerted to the odor of illegal narcotic emitting from the vehicle at approximately 4:24 p.m. The K-9 was rewarded and placed back in the patrol vehicle by 4:25 p.m. Bemis subsequently asked Bonilla to drive the vehicle to a police post, where the vehicle was searched. The search revealed ten kilos of cocaine.
II.
The grant or denial of a motion to suppress is a mixed question of law and fact. United States v. Ellis, 497 F.3d 606, 611 (6th Cir.2007). “On appeal, we review the district court’s findings of fact for clear error and its conclusions of law de novo.” Id. When reviewing a district court’s denial of a motion to suppress on the law, we consider the evidence in the light most favorable to the government. United States v. Smith, 549 F.3d 355, 359 (6th Cir.2008) (citing United States v. Montgomery, 377 F.3d 582, 585 (6th Cir.2004)).
III.
A.
The dog sniff, which does not constitute a “search” under the Fourth Amendment, United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), *701 occurred while Bemis was properly in possession of Bonilla’s license and registration. See Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (“[T]he use of a well-trained narcotics-detection dog — one that does not expose noncontraband items that otherwise would remain hidden from public view ... during a lawful traffic stop, generally does not implicate legitimate privacy interests.”) (internal quotation marks and citation omitted). Most importantly, any delay in Bonilla’s detention caused by conducting the brief drug dog sniff amounted to a de minimis intrusion on Bonilla’s liberty interest. Thus, it was not an unreasonable violation of his Fourth Amendment rights. See Ingraham v. Wright, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (“There is, of course, a de minimis level of imposition with which the Constitution is not concerned.”); United States v. Alexander, 448 F.3d 1014, 1017 (8th Cir.2006) (“[E]ven if a dog sniff is thirty seconds to two minutes over the line drawn at the end of a routine traffic stop, a two minute delay to conduct a canine sniff is a de minimis intrusion on the driver’s personal liberty that does not violate the Fourth Amendment.”) (internal citations and quotation marks omitted); see also United States v. Boyce, 351 F.3d 1102, 1107 n. 4 (11th Cir.2003) (citing United States v. Purcell, 236 F.3d 1274, 1279 (11th Cir.2001) for the proposition that “three minute detention after requested information arrived was de minimis and not an unconstitutional detention”).
B.
Furthermore, the district court did not err in finding that Bemis had reasonable suspicion that criminal activity was afoot to prolong the traffic stop. “In evaluating the constitutionality of a Terry stop, we engage in a two-part analysis of the reasonableness of the stop.” United States v. Davis, 430 F.3d 345, 354 (6th Cir.2005). First, we ask “whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articu-lable facts which gave rise to reasonable suspicion.” United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993) (internal quotation marks and citation omitted). Whether reasonable suspicion exists must be considered under the totality of the circumstances, recognizing that “even a string of innocent behavior added together may” satisfy this legal standard. United States v. Richardson, 385 F.3d 625, 631 (6th Cir.2004) (citing United States v. Ar-vizu, 534 U.S. 266, 273-75, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). “If the detention is proper, then the second question is whether the degree of intrusion ... was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials’ conduct given their suspicions and surrounding circumstances.” Torres-Ramos, 536 F.3d 542, 551-52 (6th Cir.2008) (internal quotation marks and citation omitted).
Here, the record shows that Bemis had knowledge of the following facts when he allegedly expanded the scope of the initial stop: (1) Trooper Barrett’s observations that (a) defendant was driving a large vehicle with tinted windows and out-of-state “tags” approximately ten miles per hour under the speed limit; (b) defendant appeared very rigid in his posture; and (c) defendant appeared “scared to death” when Barrett drove by his vehicle[1] (emphasis added); (2) defendant claimed not *702 to know his girlfriend’s last name because he had known her for “a little while”; (3) however, when defendant learned that Bemis was going to speak with his girlfriend, he suddenly remembered her last name, and stated that he had known her for three years; (4) defendant stated that he was going to Columbus on vacation; (5) while defendant’s girlfriend stated that they were going to Columbus because they had never been there, and that they were going to visit friends.
In Torres-Ramos, we found that the following facts were sufficient to establish reasonable suspicion:
(1) that [the driver] acted nervously in response to [the officer’s] questions; (2) that the van was from [out of state] and had tinted windows; (3) that [the driver] was unable to provide the last name of the van’s owner (though she did provide a reason, i.e., a recent marriage); and (4) that [the driver’s] description of her travel plans were vague. With respect to the travel plans, [the officer] was suspicious about [the driver’s] claim that she had flown from Los Angeles to Vancouver, Washington to get the van earlier that week, yet could not remember the flight details.
Torres-Ramos, 536 F.3d at 552.
There are clear parallels between the facts of this case and those in Torres-Ramos. First, the officer observed the driver acting nervously. Second, the automobile was a large vehicle with tinted windows and out-of-state plates. Third, the officer confronted a driver who was unable to provide the last name of someone each driver would clearly be expected to know — the van’s owner in Torres-Ramos, and the driver’s girlfriend and passenger in the present case. Fourth, both drivers provided arguably plausible explanations for not knowing the individual’s last name — a recent marriage in Torres-Ramos and a new dating relationship in the instant case. Finally, in each ease, the drivers’ descriptions of their travel plans were vague. Indeed, in the present case, not only were the travel plans provided by the driver ambiguous, they also conflicted with the plans stated by the passenger.[2] In this regard, the findings of fact by the district court were not clearly erroneous.
Although the majority first correctly states that a determination regarding reasonable suspicion must be based on a totality of the circumstances, they then proceed to address each factor supporting a finding of reasonable suspicion in isolation. Maj. Op. at 698-700. “Terry, however, precludes this sort of divide-and-conquer analysis.” Arvizu, 534 U.S. at 274, 122 S.Ct. 744. The Supreme Court has consistently rejected attempts by lower courts to evaluate and reject factors “in isolation from each other” because this approach “does not take into account the ‘totality of the circumstances’ as [the Supreme Court’s] cases have understood that phrase.” Id. Here, defendant’s behavior, specifically, driving too slowly and his apparent rigidness, standing alone, are innocuous. Yet, when coupled with his reported nervousness, “he appeared to be scared to death,” defendant’s unusual and conflicting answers about his girlfriend, and the inconsistent statements from defendant and his girlfriend regarding the stated purpose of their trip,[3] there are sufficient relevant *703 factors to support a finding of reasonable suspicion that criminal activity was afoot.
In this regard, the majority’s analysis is fundamentally flawed because it is limited to whether the evidence supports a finding that defendant was engaged in transporting “contraband” rather than suspicion of criminal activity in general:
Lastly, the fact that Bonilla could not remember his passenger’s last name and stated he only knew her for a short time even though she was his girlfriend does raise some red flags, but it does not rise to the level of suspicion of the presence of contraband.
Thus, the totality of the circumstances did not give rise to a reasonable suspicion that Bonilla was transporting drugs in his vehicle at the moment when Bem-is stopped writing the traffic citation and placed Bonilla and his passenger in police cruisers.
Maj. Op. at 699-700. It is well-settled that reasonable suspicion that “criminal activity may be afoot” does not require suspicion of a specific crime, but rather criminal activity in general. Terry, 392 U.S. at 30, 88 S.Ct. 1868; see also United States v. Martinez, 808 F.2d 1050, 1053 (5th Cir.1987) (“In Terry v. Ohio, the Supreme Court recognized that a reasonable suspicion of criminal activity based on contemporaneous observations may justify a temporary stop and detention for the purpose of investigating that suspicion, even though the officer does not have probable cause to believe that a particular crime has been committed.”) (footnote omitted).
The majority acknowledges that “Bemis only detained Bonilla for a short period of time,” but finds this fact “irrelevant” because they hold that “Bemis lacked reasonable suspicion to do so.” Maj. Op. at 699-700. Because I conclude that reasonable suspicion was present, I briefly address the second part of the Terry analysis— whether the time and intrusiveness of the stop were reasonable. As noted above, the drug dog sniff only took one minute to complete. During this time, Bemis “ ‘diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quiekly[.]’ ” United States v. Orsolini, 300 F.3d 724, 730 (6th Cir.2002) (quoting United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)). Accordingly, because the added detention was “sufficiently limited in time” and “used the least intrusive [investigative] means reasonably availablef,]” I conclude that the duration and scope of the detention was constitutionally permissible. Bennett v. City of Eastpointe, 410 F.3d 810, 825 (6th Cir.2005) (internal quotation marks and citation omitted).
Given Arvizu and our findings in Torres-Ramos, I conclude that, under the totality of the circumstances, the forgoing facts are sufficient to establish a reasonable suspicion that criminal activity was afoot. Moreover, because I also find that the “degree of intrusion ... was reasonably related in scope to the situation at hand,” I would hold that it was constitutionally permissible for Bemis to briefly detain Bonilla beyond the scope of the initial stop to run his drug dog around the vehicle. Garza, 10 F.3d at 1245 (internal quotation marks and citation omitted).
IV.
For these reasons, I would affirm the district court’s order denying the motion to suppress. Accordingly, I respectfully dissent.

. "Reasonable suspicion can be based upon police officers’ own observations or upon the collective knowledge of other officers.” United States v. Braggs, 23 F.3d 1047, 1049 (6th Cir.1994). It is important to note that Barrett “teach[s] [criminal interdiction] for several [fjederal agencies ...” in the United States, Canada, and Mexico, and trains officers to look for certain things, "certain driving man *702 nerisms ... patterns of demeanor from the driver" that "indicate suspicious” behavior.

. As the majority acknowledges, "[ijnconsis-tencies in the claimed purpose of a trip may be grounds for reasonable suspicion.” Maj. Op. at-, citing United States v. Hill, 195 F.3d 258, 272 (6th Cir.1999).

. Although Bonilla’s and his girlfriend’s answers were consistent regarding their ultimate destination, Colombus, Bemis testified that the stated purpose of their trip was inconsistent: "It didn’t match up. She didn't say: We are on vacation going to Columbus. She said: we are going to visit some friends. *703 We have never been to Columbus so we are going to go to Columbus.”