**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0109n.06

**No. 09-3705**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 15, 2011**
LEONARD GREEN, Clerk

| | |
|---|---|
| **UNITED STATES OF AMERICA,**       ) | |
|           ) | |
|      **Plaintiff-Appellee,**     ) | |
|           ) | **On Appeal from the United** |
| **v.**           ) | **States District Court for the** |
|           ) | **Southern District of Ohio** |
| **JERMAINE M. RILEY,**        ) | |
|           ) | |
|      **Defendant-Appellant.**    ) | |

Before:     GUY, BOGGS, and GIBBONS, Circuit Judges.

   BOGGS, Circuit Judge.

Arguing that police unlawfully stopped a vehicle under false pretenses and that he was wrongfully searched once the car was stopped, Jermaine Riley appeals his judgement of conviction. For the reasons set forth below, we hold that the vehicle was not unlawfully stopped and that Riley was properly searched based on probable cause to arrest. We therefore affirm the district court.

I

Officers of the Columbus Ohio Police Department ("COPD") arrested defendant, Jermaine Riley, after several encounters with him between October 2005 and April 2007. On October 10, 2005, the police conducted a consensual search of a friend's residence where Riley was manufacturing and distributing narcotics in exchange for supplying his friend with crack for personal

use. The police recovered cocaine, cocaine base, items used to produce crack cocaine, and a loaded revolver.

On March 9, 2007, COPD officers stopped a vehicle in which Riley was a passenger in the front seat. The officers first noticed the vehicle across an intersection, heading in the opposite direction. Not recognizing the vehicle or driver, the police ran the license plate number (the facts are conflicting if it was from a front or back plate) and learned it was from out of town. They turned to follow the vehicle and saw that the rear license plate light was not working. When the police approached the stopped vehicle, the driver was very nervous. Suspicions raised, the officers called in a K-9 narcotics detection unit that they knew was nearby.

The K-9 unit arrived within 2-3 minutes, before the citation process was complete. K-9 Andor searched the outside of the vehicle while the occupants still were in it. K-9 Andor gave positive alerts indicating the presence of narcotics at the driver's door and at the front passenger's door. The police then directed the driver to step out of the car. As he did, a bag of cocaine dropped from the driver's lap onto the vehicle's front floorboard. At that time the driver was notified that he was under arrest. The police handcuffed him and patted him down uncovering a loaded 9-mm Taurus pistol tucked in the front waistband of his trousers. The driver told the police that the gun was Riley's (lab testing later confirmed that Riley's DNA was on the gun and the driver's was not). At this point, Riley was directed out of the car, handcuffed, and patted down by a second officer who found a cookie of crack in Riley's front right pants-pocket.

On April 10, 2007, the police searched Riley's mother's house based on a warrant obtained as a result of a controlled drug buy the day before. Inside the house, the police found crack cocaine,

scales, paraphernalia associated with crack production and usage, the drug buy money, and two loaded AK-47 rifles placed in tactical positions within the house.

On July 12, 2008, Riley was charged in an 11-count superseding indictment for multiple drug and firearm crimes. Riley filed a motion to suppress evidence arising from the traffic stop. That motion was denied. After a five-day trial, a jury convicted Riley of conspiracy to manufacture, distribute, and possess with the intent to distribute more than 50 grams of cocaine base (crack) and of the distribution, possession, and manufacturing of crack, and the possession of firearms in furtherance of a drug-trafficking crime. The trial court sentenced Riley to serve 70 years in prison. Riley timely filed this appeal, challenging the evidence obtained in the vehicle stop and the failure of the trial court to give an augmented unanimity instruction to the jury.

II

When reviewing a denial of a motion to suppress, this court reviews the findings of fact for clear error and its conclusions of law de novo. *United States v. Simpson,* 520 F.3d 531, 534 (6th Cir. 2008). Factual findings of the district court may be rejected only where "on the entire evidence [the court is] left with the definite and firm conviction that a mistake has been committed." *Id.* at 535 (citation omitted).

Riley argues that the district court committed clear error when it found that the car's license plate light was out, arguing that when Riley was stopped it was dark and the officers would only have been able to run the rear license plate if the light was working. But the district court found that both police officers testified that the light was not working and that defendant presented no evidence or

testimony to the contrary. Nothing in the record or on appeal warrants a finding of clear error by the district court.

At the core of Riley's argument is his belief that the licence plate light violation was a pretext for the police to search for drugs. Even if it were, motive is not relevant in a Fourth Amendment analysis, so long as the police had probable cause to believe that a traffic violation occurred before they stopped the vehicle. *United States v. Hill,* 195 F.3d 258, 264 (6th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996) (other citations omitted), *cert. denied*, 528 U.S. 1176 (2000). A police officer may legally stop a vehicle when he has probable cause to believe a civil traffic violation has occurred. *United States v. Blair,* 524 F.3d 740, 748 (6th Cir. 2008). Probable cause here was established by the broken license plate light, and the district court's finding of that fact was not clearly erroneous.

III

Riley's second contention is that once the vehicle was stopped, the officers lacked probable cause for his arrest, and his Fourth Amendment right to be free from unreasonable searches and seizures was violated when the officers searched his person and pockets, finding cocaine. The Fourth Amendment's guarantee against unreasonable search and seizure prohibits warrantless searches with "only a few specifically established and well-delineated exceptions." *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008)

One of those exceptions is search incident to arrest. *Ibid*. If the officer had probable cause to arrest Riley, then Riley could be lawfully searched incident to his arrest. When officers lack probable cause to arrest, a *Terry* search or pat down is permissible for the limited purpose of ensuring

the safety of the officer and others around him and the search must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments of assault. *United States v. Garcia,* 496 F.3d 495, 505 (6th Cir. 2007); *see Terry v. Ohio,* 392 U.S. 1, 29 (1968). The United States Supreme Court has "explicitly recognized that there is a 'distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons.'" *United States v. Robinson*, 414 U.S. 218, 227 (1973) (quoting *Terry v. Ohio*, 392 U.S. at 25).

To determine whether probable cause exists to arrest a suspect, this court "must determine whether at that moment the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that a suspect had committed or was committing an offense." *Smith*, 549 F.3d at 359 (citing *United States v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006) (internal alterations omitted). "The touchstone of the Fourth Amendment is 'reasonableness' based upon the totality of the circumstances." *Hill,* 195 F.3d at 264 (citing *Ohio v. Robinette,* 519 U.S. 33, 39 (1996) (internal citations omitted).

Based on the totality of the circumstances, a prudent person would believe that Riley had committed or was committing a crime. The arresting officer knew the following facts when he searched Riley: the driver was acting very nervous; the drug dog had alerted to the presence of narcotics on both the driver and passenger side doors; a large quantity of cocaine fell out of the driver's clothes when he got out of the car; and the driver had been patted down, and a firearm was found tucked into his waist that the driver claimed belonged to Riley. These facts were sufficient to

establish probable cause to arrest Riley for involvement in a drug crime, and thus the search did not violate Riley's constitutional rights.

## IV

Jury instructions are reviewed under an abuse of discretion standard. *United States v. Jamieson,* 427 F.3d 394, 414 (6th Cir. 2005). Claims that jury instructions are erroneous are reviewed "as a whole in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Damra,* 621 F.3d 474, 498 (6th Cir. 2010) (citing *United States v. Russell,* 595 F.3d 633, 642 (6th Cir. 2010)). A judgment will be reversed "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Ibid* (citations omitted).

Riley argues that the district court improperly refused to give an augmented unanimity jury instruction for Counts 2-11 of the indictment so that each juror would have to agree on the means by which the crime was committed ( i.e., by Riley directly or by a co-conspirator). Instead, the district court only gave a general unanimity instruction, explaining that there were two different ways Riley could be found guilty: either for personally committing the crime, or for being a member of a conspiracy where the crime was committed by a co-conspirator in furtherance of the conspiracy.

The general rule is that "only a general unanimity instruction is required where the indictment count provides multiple factual bases under which a conviction could rest." *Damra,* 621 F.3d at 504-05. "The touchstone [for an augmented unanimity instruction] has been the presence of a genuine risk

that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts." *Id.* at 505.

The question is whether the commission of the crime and participation in a conspiracy are different equivalent means which can satisfy the possession and manufacturing offenses or are "different offenses altogether." *Schad v. Arizona,* 501 U.S. 624, 643 (1991). This court has held that where there are charges of drug possession with intent to distribute based on both liability as a principal and as an aider and abettor, "a specific unanimity instruction is not needed simply because the government presents multiple factual scenarios and theories of liability to prove the commission of a single offense." *United States v. Washington,* 127 F.3d 510, 513-14 (6th Cir. 1997). The same logic applies where the charge is both conspiracy and distribution, possession, and manufacturing of crack, and the possession of a firearm in furtherance of a drug trafficking crime.

V

An augmented unanimity instruction is therefore not needed here, as the commission of the crime and participation in a conspiracy to do the same are different but equivalent means to comment an offense, not two different offenses altogether.

The district court's judgment of conviction is AFFIRMED.