**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0083n.06

No. 10-1551

| | | |
|---|---|---|
| | | **FILED**<br>***Jan 24, 2012***<br>LEONARD GREEN, Clerk |

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,      )
           )
    Plaintiff-Appellant,      )
           )   ON APPEAL FROM THE
     v.           )   UNITED STATES DISTRICT
           )   COURT FOR THE EASTERN
ELIJAH SMITH,         )   DISTRICT OF MICHIGAN
           )
    Defendant-Appellee.     )
           )

BEFORE: KEITH, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

The government appeals the district court's order granting defendant Elijah Smith's motion to suppress the evidence against him. We reverse and remand the case for further proceedings in accordance with this opinion.

I.

The events giving rise to this case began when Officer Juan Sifuentes of the Welasco Police Department in Texas contacted Drug Enforcement Administration ("DEA") Agent Ross Roel in Michigan to tell him that they had intercepted a Federal Express package with a half kilogram of suspected heroin that was being shipped to "Jason Christie" at 19975 Hartwell Street in Detroit. *United States v. Smith*, 684 F. Supp. 2d 937, 938 (E.D. Mich. 2010). After Agent Roel agreed to conduct a controlled delivery, Officer Sifuentes allowed the package to proceed on its normal route

to a Federal Express facility in Detroit. When it arrived, a DEA canine positively alerted to the package for the odor of a controlled substance, and a subsequent field test at DEA headquarters confirmed that the substance was heroin. Agents then obtained a search warrant for the Hartwell Street residence from a Wayne County judge and repackaged a representative sample of the heroin for use in the controlled delivery. *Smith*, 684 F. Supp. 2d at 938.

The controlled delivery took place later that same day. Dressed in a Federal Express uniform, Officer Lindsey Pace parked a police vehicle disguised as a Federal Express delivery van in front of the Hartwell Street residence, got out, and knocked on the front door. An individual, later identified as Elijah Smith, answered the door, signed for the package, and then went back inside. *Smith*, 684 F. Supp. 2d at 938. After Officer Pace departed, Smith opened the front door of the residence and looked north and south on Hartwell Street. *Id.* Two minutes later, Smith walked out of the residence, got into a vehicle, and began to drive south. *Id.* A transmitter attached to the package that was designed to alert officers to the movement and opening of the package had not been activated.

The officers at this point moved in. Agent Roel's vehicle and another undercover vehicle blocked the intersection where defendant was headed and activated their emergency lights and sirens, directing Smith to stop. Smith did not stop at the officers' commands, however. He shifted into reverse and "recklessly" drove backward at a high rate of speed for approximately half a block, until other law enforcement vehicles boxed him in near the original delivery address. *Smith*, 684 F. Supp. 2d at 938-39. Once Smith was stopped, the officers exited their vehicles, identified themselves, and secured Smith in handcuffs. *Smith*, 684 F. Supp. 2d at 939. The officers also recovered the package

of heroin, which they observed protruding from Smith's waistband. *Id.*

Smith was subsequently indicted for conspiracy to possess with intent to distribute a controlled substance and possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(l). He filed a motion to suppress the evidence in the district court. After briefing and a hearing, the district court granted Smith's motion. *Smith*, 684 F. Supp. 2d 937. It reasoned that "[Smith's] arrest cannot be justified if authorities lacked a proper basis under the Fourth Amendment for attempting to stop him in the first place," and it concluded that the drug evidence needed to be suppressed because the officers lacked reasonable suspicion to support "the initiation of the stop." *Id.* at 940 n.3, 942. The government timely appeals.

II.

When reviewing a district court's decision regarding a motion to suppress, we must consider the evidence "in the light most likely to support the district court's decision." *United States v. Marxen*, 410 F.3d 326, 328 (6th Cir. 2005) (citation and internal quotation marks omitted). We review the legal aspect of a district court's determination regarding the existence of reasonable suspicion or probable cause de novo. *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994) (citation omitted).

III.

The government argues that the officers had reasonable suspicion to stop, as well as probable cause to arrest, Smith because he signed for and received a package known to contain heroin, peered up and down the street in a suspicious manner after signing for the package and just before leaving

in a vehicle, and disregarded the officers' order directing him to stop his vehicle by driving in reverse at a high rate of speed in the opposite direction until other officers boxed him in. We agree.

A.

The problem with the district court's analysis is that the police did not need to justify their "attempt to stop" Smith. *Smith*, 684 F. Supp. 2d at 940 n.3, 942. The Fourth Amendment governs searches and seizures; it does not govern attempts at searches and seizures. If a suspect is not seized because he evades law enforcement – as Smith was not seized when he put his vehicle in reverse and drove away from the officers here – the Fourth Amendment is not implicated. *Brendlin v. California*, 551 U.S. 249, 254 (2007) ("[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."); *California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("[The Fourth Amendment] does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure."); *United States v. McCauley*, 548 F.3d 440, 443 (6th Cir. 2008) ("We determine whether reasonable suspicion existed at the point of seizure—not . . . at the point of *attempted* seizure.") (emphasis in original).

Smith acknowledges this fact, but argues that the government waived its argument that evidence of his would-be flight is relevant because it "cited no cases and developed no argument for the proposition that a seizure does not occur until the defendant submits to authority." However, while the government may not have fully developed the argument before the district court, it certainly raised the issue. In response to Smith's motion to suppress, the government asserted that

Smith's flight from the officers in his vehicle supported a finding of reasonable suspicion or probable cause. The district court rejected that contention, making clear that it considered Smith's would-be flight irrelevant because it occurred after the police *attempted* to seize him. We decline to hold that the government waived the issue by failing to develop or press its argument any further. *Cf. United States v. Archibald*, 589 F.3d 289, 296 (6th Cir. 2009) (holding that the government waived an issue on appeal because it failed to present the issue to the district court at all).

Smith also asserts that we should remand the case because whether he actually fled from the officers is "a fact-bound issue" and "[t]he district court may very well have determined that [he] was merely attempting to get out of the path of oncoming emergency vehicles, rather than attempting to flee." We disagree. There is no dispute that when "agents moved in to block [Smith's] vehicle[,] [Smith] . . . switched the vehicle into reverse" and went the other way at a high rate of speed. *Smith*, 684 F. Supp. 2d at 938 ("[Smith's vehicle] immediately went in reverse very fast northbound" and the police vehicles "with the emergency lights and siren . . . followed."). Regardless of how the district court might have viewed Smith's conduct, and regardless of Smith's intent, reasonable officers would have seen it as evasive. *See Watkins v. City of Southfield*, 221 F.3d 883, 889 (6th Cir. 2000) ("We deem the ignoring of orders to pull over the vehicle to be equivalent for these purposes to attempting to flee from police upon a signal to stop.").

B.

The facts in this case are familiar. We upheld a district court's denial of a motion to suppress in nearly identical circumstances in *United States v. Bartholomew*, 310 F.3d 912 (6th Cir. 2002).

In that case, the United Parcel Service ("UPS") contacted the police regarding a suspicious package. *Id.* at 916. The police determined that the package contained marijuana, and an undercover officer, posing as a UPS driver, delivered the package to the labeled address. *Id.* A man named Warren Harris answered the door, signed for the package, and went back inside. *Id.* He then left the house by the back door and walked through the neighborhood in a manner suggesting to the police that he was trying to determine whether he was being observed. *Id.* After several minutes, Harris got into a car that had stopped for him and the police followed in an unmarked van. *Id.* The occupants of the car apparently became aware that they were being followed and shortly thereafter parked and fled on foot. *Id.* Upon review, we held that these facts gave the officers probable cause to arrest one of the car's former passengers, Richard Bartholomew. *Id.* at 919.

The present case is essentially the same. Here, Smith signed for and received a known package of heroin; he glanced up and down the street in a suspicious manner before leaving in a vehicle; and he subsequently ignored the officers' commands for him to stop the vehicle, instead shifting into reverse and driving at a high rate of speed away from them for approximately half a block until other officers boxed him in. *Smith*, 684 F. Supp. 2d at 938-39. Because "the facts and circumstances within [the officers'] knowledge . . . were sufficient to warrant a prudent person in believing that [Smith] had committed or was committing an offense," i.e., that he knowingly possessed the heroin, the officers had probable cause to arrest Smith at the time he was seized. *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (citation and internal quotation marks omitted); *cf. also United States v. Dotson*, 49 F.3d 227, 231 (6th Cir. 1995) (explaining that

"Dotson's efforts to flee, coupled with [the detective's] reasonable suspicion that Dotson was involved in criminal activities, established probable cause to arrest Dotson.").

IV.

For the foregoing reasons, we reverse the district court's order suppressing the evidence and remand for further proceedings consistent with this opinion.